SUMMERS & BRANNIN *et al. v.* A. Roos & Co.

42  749
77  452

1. MORTGAGE: DEED OF TRUST: TO SECURE FUTURE ADVANCES. — A mortgage or deed of trust to secure future advances is a valid security for such advances against subsequent liens and purchasers. It is not necessary that the fact that the mortgage or deed of trust was given to secure future advances should distinctly appear on the face of the deed; it is sufficient if its true character can·be ascertained by the exercise of common prudence and ordinary diligence.

2. SAME: SAME: CASE IN JUDGMENT. — B. executed a deed of trust to H., which expressed on its face, that it was intended to secure a note of B. for $40,000, payable to S. & B. It appeared from a contemporaneous written agreement, that the deed of trust was made to secure future advances from S. & B. to B. · A creditor of B., who had no knowledge or notice of the true character of the trust, attached the property conveyed in the deed of trust, and the trustee gave bond to try the right of property. *Held* — That the trust deed was not void, and that the trustee was entitled to the property conveyed against the lien of the attaching creditor.

3. SAME: SAME: PAYMENT. — The payment of a note secured by trust deed renders the deed of trust inoperative, and its enforcement will be void as against the creditors of the grantor.

4. SAME: SAME : FRAUD AND FRAUDULENT CONVEYANCE : NOT AFFECTED BY SUBSEQUENT FRAUD AND ILLEGALITY. — A deed of trust or mortgage valid and *bona fide* in its creation will not be invalidated by the subsequent fraudulent or illegal acts of the parties thereto. Burrill on Assignments, 442.

5. SAME: SAME: SAME: RETENTION OF POSSESSION OF PERSONAL PROPERTY NOT EVIDENCE OF FRAUD, UNLESS GRANTOR OR MORTGAGOR HAS POWER OF SALE. — The possession by the grantor or mortgagor of personal property conveyed by deed of trust or mortgage, will not be fraudulent, where the deed authorizes the grantor or mortgagor to retain possession until default of payment; but if the grantor or mortgagor retains possession with a power of sale, the deed is fraudulent and void.

6. SAME: SAME: SAME: RETENTION OF POSSESSION AND USE AND DISPOSITION OF PROPERTY. — A stipulation in a deed of trust, that the grantor shall retain possession of the personal property embraced in the deed, and shall continue to use and have the right to sell and dispose of the same, until the trustee shall deem it necessary to take possession, is voidable only by those creditors who obtain liens upon the property before the trustee takes possession.

7. SAME: SAME: SAME : PREFERENCE OF CREDITORS. — A conveyance made

to secure a present indebtedness and future advances without any fraudulent intent, but for the purpose of protecting the property of the grantor from other creditors, and giving a preference to the secured creditor, is not for this reason fraudulent and void.

8. SAME: SAME: STATUTE OF FRAUDS EMBRACES ONLY EXISTING CREDITORS. — Under the Statute of Frauds of this State, a conveyance or contract fraudulent as to creditors cannot be attacked by creditors whose claims were contracted after the execution of such fraudulent conveyance, unless made with intent to defraud them; and though a conveyance or contract be decreed void as to prior creditors, it shall not on that account be void as to subsequent creditors or purchasers. Rev. Code, 359, art. 3.

9. TRIAL OF RIGHT OF PROPERTY: BURDEN OF PROOF. — The plaintiff in execution or attachment on the trial of the right of property, is bound to show that the property levied on is liable to the execution or attachment, and if only a portion of the property levied on is liable, plaintiff must show what specific portion.

ERROR to the Circuit Court of Lawrence county. Hon. Jno. E. McNair, judge.

On the 20th of March, 1867, defendants in error sued out an attachment against W. P. Baggett. The attachment, the day of its issuance, was levied by the sheriff of Lawrence county on certain real estate of Baggett, and also on a stock of goods, which were valued by the sheriffs at $11,000. On the 30th of March, 1867, J. J. B. Hilliard made an affidavit, claiming the stock of goods levied on, and gave bond and security in double their value, conditioned as required by law. At the May Term, 1867, an issue as to right of property in the stock of goods was made up between the defendants in error and the plaintiffs in error. At this term, on the trial of the issue joined between the parties, the following testimony was introduced for defendants in error: The attachment for $5380, the levy endorsed thereon, and the judgment thereon previously rendered. That the claim upon which the attachment was based was contracted on the 13th February, 1867. Also sundry other attachments for debts contracted from the 13th to the 14th of February, 1867.

A. O. Cox testified — That he levied the attachment on the stock of goods in controversy. He found them in Baggett's

storehouse in Brookhaven. Chesman, Hubert, and Hilliard, the claimant, were present, and handling the goods at time of levy. The first two were clerks of Baggett, and said they were taking an inventory. Goods left in charge of Chesman, who took the inventory returned with the levy; did not know in whose employ Chesman and Hubert were; had been clerks of Baggett; Baggett was not present; don't know goods in his possession were in his place of business.

J. J. B. Hilliard testified — That the stock of goods was in his possession at time of levy. He held possession under a deed of trust executed by W. P. Baggett, to secure Summers & Brannin.

This deed of trust, which was read in evidence, was recorded in Lawrence county, on the 30th of January, 1867, was executed on the 19th of December, 1866, by W. P. Baggett, plaintiff in error, and Summers & Brannin. Baggett, in consideration of one dollar, and to secure a debt afterwards mentioned, conveyed town lots in Brookhaven, a plantation in Lawrence county, and some stock, and the stock of goods, wares, and merchandise now in the storehouse at Brookhaven. The plaintiffs in error to hold said conveyed property for the following purposes and conditions: "If the said Baggett shall well and truly pay at maturity a certain note this day executed to Summers & Brannin for the sum of $40,000, and payable ninety days after date, at the Canal Bank, New Orleans, then this deed to be null and void ; but if he should fail," the trustee Hilliard is to sell, after giving notice, etc. "It is understood that said Baggett is to retain possession of said property, until he shall make default in the payment aforesaid." "But if Baggett should fail to pay the amount of said note at maturity, then he is to deliver possession of the real estate and of so much of said personal property as may then be on hand, to be sold by said trustee as aforesaid."

Witness Hilliard received from Summers & Brannin, on the 7th of March, 1867, written instructions to take possession of the stock of goods conveyed in the trust deed, and took possession, on the 16th of March, by consent of Baggett, given in

writing, and was proceeding to take an inventory when the attachments were levied.

The stock of goods was sold at public auction, in bulk, on the 11th of April, 1867, to John Brannin for $4000. They were afterwards sold for $5000, one half cash, balance payable in the fall.

Possession of the goods was given in pursuance of an agreement made between Baggett and Summers & Brannin. Don't know that the parties feared attachments; they had private conversations; had my surmises.

W. P. Baggett testified — That he executed a deed of trust, to secure a debt to Summers & Brannin, estimated at $40,000. Summers & Brannin were my commission merchants in New Orleans. I shipped them a large quantity of cotton, and they advanced me large sums of money; my dealings were principally with Summers, in whom I had unlimited confidence. At time of executing deed of trust, my New York debts, amounting to about $8000, were maturing, and I obtained an extension of sixty days, by giving them the acceptance of Summers & Brannin, which they (Summers & Brannin) agreed to accept, upon condition I secured them against loss by the deed of trust. I executed the trust reluctantly, and in the belief that it would save my credit in New York, and for the purpose of paying my New York liabilities and to get advances on cotton. At the time the trust deed was executed, and parcel of the same transaction, Summers & Brannin gave me the following written instrument:

"NEW ORLEANS, *Dec. 19th*, 1866.

" Whereas, J. P. Baggett, of Brookhaven, Mississippi, has this day executed to Summers & Brannin, of New Orleans, his promissory note for $40,000, due at ninety days, and has executed a deed of trust to J. J. B. Hilliard, to secure the payment of the same, to which reference is now made.

· " There is a large unsettled account between the said Baggett and the said Summers & Brannin, growing out of various consignments of cotton by him to them, and various advances in money by them to him; and the said parties contemplate a con-

tinuance of like transactions between them up to the maturity of said note, and it is uncertain what may be the balance then due by said Baggett to them. Now be it known, that the object of said note and of said deed of trust is to cover the balance that may be due by him to them at the maturity of said note.

"In the meantime Summers & Brannin are to advance to said Baggett $70 per bale in cash and groceries, for such cotton as he may, before the maturity of said note, purchase or trade for and consign to them. This does not include any of the cotton embraced in the deed of trust, or that expected of Larkin. It is understood that Baggett owes about $1000 on Strickland & Gartman's cotton mentioned in the trust deed, which amount the said Baggett is to make all reasonable efforts to pay out of his own means. Should he be unable to meet the charge on that cotton, then Summers & Brannin are to advance the amount on the receipt of the cotton.

"The said Summers & Brannin are to take up, for the accommodation of said Baggett, his acceptances maturing, late in this month, to an amount not exceeding $8000, which acceptances are on account of goods purchased in New York; they are also for his accommodation to accept the draft of J. Bloom & Co. for an amount not exceeding $3500, upon groceries furnished last month. They are also to assume and pay an amount not exceeding $500, on account of groceries purchased this month up to this time. These several amounts, when paid by Summers & Brannin, are to go to the debit of said Baggett on his account with said Summers & Brannin. On the maturity of said note, the said Summers & Brannin are to state the account, showing the balance, if any, due by him to them, and this balance will be the true amount due on said note. 　　　SUMMERS & BRANNIN."

This instrument was signed in duplicate, and one retained by each of the parties. It was never recorded.

The deed of trust was not signed for fraudulent purposes, but at the solicitation of Mr. Summers, with a view to continue business and meet my liabilities. I was solvent at the time:

such was mine and Summers' conclusion in looking into my affairs before the trust deed was executed. The unexpected decline in cotton caused my embarrassments.

Summers & Brannin took up my New York debts, and refused to accept any further. They subsequently agreed, however, that if the debts were reduced to $5000, they would accept.

Summers promised me not to have the deed recorded, and when I found that it had been, I wrote to him that it would injure my credit.

Finding myself unable to work out of my debts, I endeavored to effect an arrangement with Summers & Brannin to secure some of my creditors. Telegraphed Summers to come to Brookhaven, and made with him the following arrangement: I agreed to transfer my plantation, eighty acres of land, near Wesson, my storehouse and stock of goods, and to execute deeds, if they would pay me $3000, with which to pay Gartman, Bennett & Coyle, who had sold me cotton which was not paid for.

After they got possession of goods, they refused to pay the $3000. Object in delivering possession of goods to Hilliard, before the maturity of the note, was to secure the creditors mentioned, and I apprehended, if I waited until later, my creditors would attach.

I executed the deed under the impression that if I failed would be of some benefit to me. Mr. Summers said I might have something by its execution.

In the storehouse about $35,000 when trust deed executed. No limitation on my right to dispose of the goods. I continued to sell and buy largely after its execution. All my visible property was included in the deed, except eighty acres of land near Wesson.

I used the goods in my own family. There was no understanding that I was to account for the proceeds.

I owe Summers & Brannin about $26,000. Did not execute to them deeds for the land, because of their refusal to pay the $3000.

Other testimony was introduced, which it is not necessary to insert.

The court, at the instance of the defendants in error, gave the following instructions:

1. If the jury believe from the evidence that the deed of trust in question was made with a view to protect Baggett in any way from his creditors, it is void, and the claimant acquired no rights under it, and they should find for the plaintiff in the attachment.

2. If the jury believe the deed was made for fraudulent purposes, it is void; and they should certify in their verdict that it was made for fraudulent purposes, and assess the value of the property replevied by the claimant.

3. A mortgage or deed of trust made to secure future advances must make that fact distinctly appear on the face of the deed, or it is void as between third parties who claim without actual notice of the intentions of the grantor and grantee in the deed of trust.

To the giving of these charges plaintiffs in error excepted.

Plaintiffs in error asked the following charges, which were refused, and to the action of the court in refusing to give them an exception was taken:

15. That the plaintiffs in execution are bound to make out their case, and to show by testimony that the certain property evied on is subject to the attachment; and if they should believe from the evidence that only a portion of the property is so subject, and that it is not shown by testimony what specific portion or articles are so subject, then they should find a verdict for the claimants.

16. The retention of the deed of trust by Summers & Brannin from the 19th day of December to the 30th day of January, is not of itself evidence of a fraudulent intent by the parties to the deed, if the evidence shows that the deed was made *bonâ fide*, and not intended to defraud creditors.

The sixth instruction was modified by the court (the modification is embraced in brackets), and plaintiffs in error excepted:

6. If the jury believe from the testimony, that the debt of

A. Roos & Co. was not contracted until the 14th of February, 1867, and that the deed of trust was recorded before that date, on the 30th of January, 1867, then the deed of trust [if the note it was intended to secure was for a debt then due] was notice to them, and they cannot set up that they had no notice of its existence.

The jury returned a verdict for defendant in error. Plaintiffs in error moved for a new trial, which was overruled; filed his bill of exceptions, and prosecutes this writ of error. The errors assigned are stated in the opinion of the court.

*W. & J. R. Yerger* for plaintiffs in error.

There was no evidence of any fraud. The defendants in error gave the credit to Baggett months after the deed was executed and upon record.

An assignment cannot be attached by a subsequent creditor upon the ground that it was fraudulent, unless made with intent to defraud subsequent creditors; or that it was fraudulent in fact, and made with a view to defraud existing creditors; and in this latter case he can only reach the property through the equity of the existing creditors, after the conveyance has been declared void, and vacated by a proceeding at their instance for that purpose. *Ede* v. *Knowles*, 2 Young & Coll., N. R., 172. And see particularly, *Bullett, Miller, & Co. et al.* v. *Taylor & Richardson et al.*, 34 Miss. 708.

Those cases which hold that an assignment fraudulent and void as to existing creditors is also fraudulent as to subsequent creditors, belong to one of two classes: 1. Either where existing creditors attached the conveyance and had it declared void by a court of equity, having it set aside and subsequent creditors let in; or, 2. Where the assignor remaining in possession of the property, and exercising acts of apparent ownership over it, subsequent creditors were thereby induced to give trust and credit; the fraudulent grantee would, therefore, not be allowed to assert his right in opposition to those who were thus induced to trust. But this last reason does not apply in States where

there is a registry law, and the alleged fraudulent assignment is put upon record.

· If an assignment be valid in its creation, it will not be affected by subsequent events; and no subsequent fraudulent or illegal acts of the parties can invalidate it. · Burrill on Assignments, 442, and cases cited.

·Assignments may be made to secure future advances as well as present responsibilities; and if honestly made, they are valid. It is altogether a question of · intention, and if free from fraud, they are valid; although they may not express on their face that they are made to secure future advances. Ib. 76 et seq.; 9 S. & M. 394; 4 Kent's Com. 11 ed. 197–8; 13 Ill. Rep. 254; 7 Cranch. 34; 2 Sandford's Ch. Rep. 78; 20 Cowan, 427; 23 ib. 123.

If a specific sum is mentioned, it is valid to cover any actual advances to the extent of that sum, but not beyond. 13 Ill. Rep. 254; 2 Sandford's Ch. Rep. 78; 7 Cranch. 34; 20 Cowan's Rep. 427; 23 ib. 123.

The facts in this case show that it is free from any fraudulent intent. An examination of Baggett's affairs showed him to be entirely solvent, and worth more than $40,000 above what he owed. · He executed the deed of trust reluctantly, to cover advancements already made and those to be made in future. If his intention then was fraudulent, and this would have facilitated it, why was he loath to make the conveyance? If it was such a plain and palpable chance for fraud, and entertaining such intention, he could not have been so obtuse as to so utterly fail to discern it.

, With regard to the secrecy enjoined upon the Probate Clerk, it simply amounts to nothing, any way it may be viewed. · The law does not require his oral publication of deeds; nor can his secrecy amount to anything when the records are there to speak for themselves, and under the public eye. The deed had all the publicity intended and required by law. Summers' wish, that it should not be mentioned by the clerk, cannot impair his right. He simply desired no more notice of the deed than the law required. See 31 Miss. Rep. 708, supra. The intention

was innocent of any wrong to Baggett's creditors, but merely intended to prevent embarrassments with his *debtors*. The reason of this is evident, when it is remembered that the commercial history of the country abundantly illustrates the infidelity of debtors when the rumor goes forth that a merchant is failing or seriously embarrassed in his business; and among the uninformed masses the existence of a deed of trust is calculated to excite such suspicions.

The arrangement effected by Baggett was made to enable him to pay his debts at maturity. Summers & Brannin were to advance the money to do this, and they did; which is a part of the debt still due by Baggett, and which the deed of trust was intended to secure.

It is said the deed is void, because it did not mention these advances on its face. It did specify on its face that it was given to secure a note for $40,000; which was a specific sum, and making it plain to every one to what extent Baggett's property was incumbered, so that no one could be deceived. It is true that at its maturity the note might be reduced; still a certain and specific sum was mentioned, and persons dealing with him were thus put upon their guard and inquiry.

The sole question in this case is one of good faith. Cases have been cited to the point, that a deed of trust must show on its face that it was intended to cover future advances. But they were very different cases from this one: they were cases where nothing was shown on the face of the deed for future advances, and nothing shown to put creditors on their guard. And there the court held, that it was not competent to prove by parol that the trust deed was made to cover future advances, and thus by parol to establish a secret trust, to the prejudice of creditors ignorant of its existence, and not informed by the instrument.

But here the deed specifically provides for the payment of a note for a certain sum, which was given for a good consideration —advances already made, and agreed to be made. The written memorandum only shows the agreement between the parties, to

the effect that the deed of trust should only be enforced for the balance due on the note at its maturity.

The first instruction given for the plaintiff below is erroneous, —is not sustained by the statute or common law. The statute declares every conveyance " made with intent to hinder, delay, or defraud creditors " shall be held void as to creditors. This is a very different rule from that laid down by the court in that instruction.

The *fraudulent intent*, which is essential in avoiding conveyances of this kind, is entirely ignored.

Baggett had a right to prefer his creditors. It was perfectly lawful to secure, by an assignment of his property, the debt he had already created, and that he was about to create, with Summers & Brannin; and if the delay was made for their preference, and not with the " intent to hinder, delay, or defraud" his other creditors, the deed is valid, although it was made to protect Baggett's property from the claim of other creditors. Such are the very ends that such assignments are made to meet.

The second instruction is equally erroneous. It declares that " if a deed is made for a fraudulent purpose, it is void." This is certainly not the law; for although it was made for a fraudulent purpose, yet unless that purpose was made to " hinder, delay, or defraud creditors," and made with that intent, it is not void.

But the third is more glaringly erroneous. That ignores the idea of a fraudulent purpose and intent altogether, and announces the novel doctrine, that " if made to secure future advances, that fact must distinctly appear on the face of the deed or it is void as to parties who claim without actual notice of the intentions of the grantor or grantee." This is not a correct rule of law, especially with regard to this instrument.

Actual notice of the purpose for which it was made was unnecessary. Constructive notice would be sufficient, or notice to put a party on inquiry.

A conveyance made to secure future advances is valid, if made *bonâ fide;* and it is only a question of intent. The fact

that such advances do not appear on its face, may be a circumstance for the jury to consider in arriving at the true intention, but the deed is not fraudulent *per se.*

This deed was sufficient to put every one on his inquiry at least, and no creditor afterwards trusting Baggett could be deceived. By it his property could not be incumbered for over $40,000 ; it might be for less, by part payment of the note before its maturity, which was only the more favorable to subsequent creditors.

But these creditors had not only constructive, but actual notice, before they took out their attachments.

When the law declares that a deed of trust not recorded shall be void as to creditors and purchasers without notice, it speaks only of judgment creditors; and if the deed is on record, or a party has notice of it before his judgment, the deed will be maintained. *Dixon & Starkey* v. *Doe ex dem. Lacoste,* 1 S. & M. 106.

The court palpably erred in refusing the fifteenth instruction asked by claimant. By refusing it, the court left the impression on the minds of the jury that the retention of the deed of trust by Summers & Brannin " was of itself evidence of fraudulent intent, although the other evidence in the case may have shown that it was made *bonâ fide,* and not intended to defraud creditors."

The modification of the sixteenth instruction was wrong, and the court evidently proceeded upon the idea that a deed of trust to secure future advances was not valid.

It is said that Baggett bought goods afterwards, which were not included in the assignment. Be this as it may, still the verdict is wrong, which includes not only these goods, but those he owned when the assignment was made; and to maintain the verdict, the plaintiff would have to establish the specific goods subject to the attachment, for the burden of proof was on him. But counsel, who insist that the goods acquired after the execution of the assignment in December are subject to their attachment, entirely forget the sale and delivery of the goods

made in March, four days previous to the levy of the attachment.

But the verdict of the jury is excessive, and finds the amount of the goods to be nearly twice the amount that they were shown to be worth by the evidence.

*J. B. Chrisman* for defendants in error.

If the deed is fraudulent on its face or it is manifestly uncertain and indefinite in the description of the property — the subject of the trust — the whole case for the appellants necessarily falls, and it is idle to examine the testimony or correct any error which the court may have made in its instructions to the jury; because a void deed on account of uncertainty, or a deed disclosing fraud upon its face, will not be held binding or subject to explanation as to third parties.

The fraud on the face of this is the same as that on the face of the deed held fraudulent in the *Farmer's Bank et al.* v. *Douglas,* 11 Smedes & Marshall, 541. It is there laid down, that, when the right to use the property mortgaged is reserved in the instrument, it is fraudulent in law.

The same doctrine is enunciated in the case of *Ewing et al.* v. *Cargill,* 13 Smedes & Marshall, 83.

When closely examined, these cases, after all, but repeat the common-law doctrine: " A possession and use inconsistent with the terms and professed objects of the deed make the deed, *per se,* fraudulent and void, since it proves conclusively, notwithstanding any colorable conveyance, that the beneficial right to the property is in the person who has such use and possession ; and, therefore, such use and possession is conclusive evidence of an original fraudulent intent in the making of the deed, and avoids it *ab initio.*"

Whilst our statute in reference to mortgages and deeds of trust has mitigated the rigid rule of the common law, which made possession by the mortgagor of the personal property mortgaged conclusive evidence of fraud, it has not unsettled the doctrine, as firmly fixed as any legal principle can be settled, that the use of property by a grantor in a deed of trust

or mortgage inconsistent with the professed object of the transaction — as if the grantor reserves the right to sell such part of the property or consume such part as he found necessary or thought proper, and especially with no proviso to account for the proceeds — is conclusive proof of a secret trust for the grantor, and a fraud by judgment of law.

The distinction between a deed fraudulent in law and fraudulent in fact is, in *Ewing et al.* v. *Cargill*, distinctly drawn. The result, so far as the validity of the deed is concerned, is of course the same. But there is no mistaking the doctrine of the court on the question of fraud in law to be:

1. That a deed of trust is fraudulent if the grantor reserves the right to consume the property; and,

2. If unnecessary to go outside of the deed to discover that fact, then it is fraudulent in law, and is therefore a question for the court, if its ruling is invoked, and not for a jury.

This deed of trust is void for uncertainty. If for its enforcement it required a Court of Chancery to render a decree, instead, as it does, require a trustee to enforce and execute it, and no such decree could be rendered without evidence *aliunde* to describe the property, it will not be held good as to third parties. A Court of Chancery will not make a deed of trust for the parties that would cut out intervening equities. Indeed, if it is vague and indefinite, a Court of Chancery would not enforce it between the original parties. See Story's Eq. Jurisprudence, vol. ii. 979, 1072, 1073; 2 Hil. on Mort., 341 and 406. Taking these well-settled legal propositions for our guide, let us examine this deed. 2 Wend. 596.

Here is a deed of trust made between a merchant in an interior village and his cotton factor in New Orleans, at or *about the most active part of the business season.* The deed discloses the fact that Baggett, in this interior town, is doing a mercantile business; which means that he is selling goods wares, and merchandise, and buying cotton from his customers. He conveys everything that he owns in this deed of trust, even to a lot of hogs and a lot of sheep, including everything now in his storehouse, to secure the payment of a large debt. This

debt is to be paid in ninety days by shipment of cotton, and Baggett retains possession of his lot of hogs and his lot of sheep, and of his storehouse stocked with goods. For what purpose are these goods at this season retained? What use could Baggett possibly make for ninety days with goods, wares, and merchandise in the midst of the business season, except to sell them or use them? It is just as plain that there was to be no interruption in Baggett's buying and selling as if the deed said so in so many words. Cumulative on this point is the conclusion of the instrument, which binds Baggett to deliver to the trustee "*so much* of said property as may remain on hand," etc.

To what can said "personality possibly" refer with greater certainty than to the goods; and what event do the parties contemplate, when they provide, expressly, for the surrender of so much as may remain on hand at the end of ninety days? When we take into consideration the large debt to be paid, the way in which it was to be met; the character of a part of the security, and their locality; and, above all, the season of the year — we *must* conclude that the creditor and the debtor contemplated a continuation of business by Baggett; because goods are perishable, much of them would be out of season and out of fashion in ninety days, and the business season would just about that time end. Any other hypothesis is against reason and common sense. Baggett was to continue the business of buying and selling — and the consequent shipping of cotton against his liabilities in the legitimate course of trade through the business and shipping season. It is not a mere presumption that the goods were retained by him to be sold; but it is an irresistible conclusion, that both the parties so construed this deed. It is deducible from its reading as manifestly and certainly as if in definite language written on its face; and if it is thus clearly apparent, it will be so treated by this court.

And now, is not such a deed fraudulent in law as to attaching creditors? Why should a deed, in which the grantor conveys corn and potatoes, which must be consumed or perish before forfeiture of condition, be any more fraudulent on that account

than a deed in which he reserves the right to sell and put the money in his pocket   It will be said that that was not the intention.   In reply to that, there is no restriction to prevent it as a consequence; and to uphold this deed under these circumstances is to put it in the power of every man in failing circumstances to so lock up his property as to defeat all his creditors, and convert all his property into money, with a view to place it beyond their reach.

There is no obligation on Baggett to retain the goods or substitute others, or account for the proceeds of sale to Summers & Brannin.   Baggett actually parts with no property in the goods.   So far as they are concerned, it is a mere contract, that, at the expiration of ninety days, Baggett shall deliver such goods as may then be on hand to the trustee.   The deed, so far as the goods are concerned, possesses none of the essentials of conveyance.   It divests the grantor of nothing; it invests the trustee with nothing; it secures to the beneficiaries nothing. Baggett may consume or sell them or keep them.

The deed is void for uncertainty in description of the personal property; and if void as to part, can it stand as good for anything?   See 4 Smedes & Marshall, 257; 27 Miss. 167–189.

What amount in character and value of these goods were deeded by this conveyance?   What constitutes a *lot* of hogs and sheep?   What sort of decree could be rendered in a Court of Chancery to foreclose the right of Baggett in this property and subject it to Summers & Brannin's debt?   How would a commissioner proceed who was directed by a decree rendered on this deed, without parol evidence to explain it?   How should he identify a *lot of hogs*, and a *lot of sheep*, and a *lot of cattle?* In the ordinary acceptation of the term, it is vague and uncertain.   It is not a technical phrase, having a definite meaning.

In *Denny* v. *Lincoln*, 13 Met., it is virtually held that property mortgaged may be attached or taken in execution, notwithstanding the creditor may have notice, unless that notice be full, clear, and explicit, designating the property, and identifying it in such way that there could be no mistake.

The case of *Bullock* v. *Williams*, 13 Pick., proceeds on the ground, that by force of the statute registration was sufficient to give effect to a mortgage of personal property; but it seems to be distinctly implied from the case, that unless the property was susceptible of identification by the description in the deed, it would be held invalid, either at common law or by statute. The goods and other personal property not being described, they have a mere executory agreement between them, that Baggett, at the enk of ninety days, shall turn over what *remains on hand* — not such as shall have perished unavoidably, but such as *remains on hand.* Then the property cannot be held to be mortgaged property. The instrument could not operate to pass the property as a pledge, because Summers & Brannin failed to take it into possession. It is charged with no lien, because a lien cannot be created by an executory agreement without delivery of possession. See *Moody* v. *Wright*, 13 Met. 17.

It wears the well-known and long-recognized badges of fraud:

1. Because the deed is general, on all Baggett possessed.

2. Baggett continued in possession and used them as his own, and by reason thereof he traded and trafficked with others, and defrauded and deceived them.

3. It was made in secret, and kept concealed.

4. Here was a trust between the parties, for the donor possessed and used them as his proper goods, and fraud is always apparelled and clad with a trust, and trust is the cover of fraud. See leading case of *Twyne*.

This deed must be held fraudulent and void in fact for the following additional reasons:

1. Because a proper application of the payment made by Baggett after its execution shows it was extinguished.

2. Because the preference given in the deed of trust to Summers & Brannin was a fraudulent preference, from which the grantor expected to receive, and reserved to himself, a benefit.

Taking either view of this deed — that it is what it purports to be — made to secure a subsisting debt, for forty-three thous-

and dollars, or intended by the parties to be used to cover future advances, it is equally void. Void in the first place, because extinguished by payment, and in the last case for want of notice to subsequent incumbrances. See 4 Kent, 175. Appellants are welcome to either horn of the dilemma; whichever suits them suit us.

Because the preference given in the deed of trust to Summers & Brannin was a fraudulent preference, from which the grantor expected to receive and reserved to himself a benefit.

*W. P. Harris* for defendants in error.

Baggett executed his note for $40,000. The deed of trust on its face declares that the conveyance was made to secure this amount, — to secure the payment of *this note;* and describes it as being given for an existing indebtedness, which is to be *paid or credited with shipments of cotton.*

But a secret agreement in writing explains the true nature of the whole transaction, and recites that there was a large unsettled *account* between the parties, growing out of shipments of cotton on one hand, and advances on the other; that the parties desire to *continue their business;* that the note is intended to secure any balance on general account which may *exist at its maturity.* This note and deed of trust, then, are not for an existing debt, and so Summers & Brannin declared under oath in New Orleans, when A. Roos & Co. attached cotton shipped them by Baggett. The factor's lien prevailed, and the open account, therefore, considered not novated by the note and mortgage.

Their defence was that the note and deed were not created on general account, but merely intended to secure an *ultimate balance*, etc., that might exist at the end of ninety days. This was a concerted scheme for holding shipments of cotton in New Orleans, while the note and deed of trust were left open to hold all visible property in Mississippi subject to execution.

The deed of trust does not restrict Baggett from selling, and makes no provision for an account. By a secret agreement, it

was not to be recorded until it was ascertained that he could not get clear of his difficulties. Summers writes the Probate Clerk to keep the matter quiet; that the deed is merely for some "ultimate purpose." Fears are entertained of attachments before the ninety days expired, and a transfer is then made of the property.

Take the third instruction for the plaintiffs below, and the sixth instruction for the claimant, with the modification by the court, and they propound nothing more than the text of Kent (4 Kent's Com. 175–6), to wit: That a mortgage or deed of trust, designed as a security for future advances, should so far expose to notice the fact as to enable parties to comprehend the real nature of the transaction. If it does not, the record of it can not, and does not, convey notice of the real transaction; and in the case of the claimant seeking to enforce, *not* the contract as recorded, but that which is evidenced by a contemporaneous instrument *not recorded*, and differing materially from the recorded instrument, to hold the fictitious recitals of the *recorded deed* notice of what it does not *speak*, would subvert the registry law.

The position of the parties below seems to have been this: The plaintiff contended that if the deed was designed to cover the debt due at its date, that debt was paid, and notice by the record was of no avail to the claimant in that aspect of the case. On the other hand, the claimant contended that the payment of the balance due at the date of the deed, by the shipment of cotton, could not affect the note and deed designed to secure future advances, and a contingent balance at the end of ninety days.

The court declares, If your mortgage is what it says, for a debt due at its date, it is notice which affects Roos & Co.; but if for any other thing — a future balance or advance of money — then it is not notice to them *by the record*, and he must have actual notice that it is for such future balances.

The court does not declare a deed of trust void, because given to secure future advances, only so far as the registry act makes it so as to creditors.

By art. 23, Rev. Code, p. 310, deeds of trust and mortgages take effect as to creditors and purchasers only from the time they are recorded. It matters not whether they be fair or fraudulent. It is not alone as the agreement or contract that it takes effect, but as the agreement *recorded;* unrecorded, it is inoperative. Nothing, then, can take effect under our law except the *precise contract which is recorded,* so that the public may know its true meaning, scope, and intent.

It is plain that a private, unrecorded agreement, materially varying a recorded mortgage, and showing that it is false in its recitals, whether fraudulent in purpose or not, is of necessity inoperative. Here there was a debt due at the date of the deed. Subsequent dealings paid off that debt. The deed purports to be for that debt. If the grantee attempts to enforce it for the actual debt, as its face warrants, he must fail, because the debt has been extinguished. An unrecorded instrument shows a mortgage, not for an existing debt, but for future advances, and a future possible balance. To enforce this unrecorded agreement to the detriment of creditors, is so clearly a perversion of the object of registry as to require no comment.

Then the matter stands thus: To enforce the recorded deed is to collect a debt already paid; if notice, it is notice of a debt not due. We are not to enforce a mortgage because the world has notice by registry. If it is for a fraudulent purpose, or for a fictitious debt, or the debt is paid, it cannot be enforced; and, in this case, to enforce it is to *violate the express contract of the parties,* which was, that it was not to operate as it on its face proposed.

A contract cannot be partly in writing and partly in parol, especially when it is required to be in writing by law. And *à fortiori,* a mortgage cannot be recorded in part, and in part unrecorded. If the part recorded be fictitious, it is simply a nullity; the unrecorded part, as to creditors, cannot be enforced.

It is said that a statement of a specific sum in a recorded mortgage is sufficient. 3 Barb. Ch. Rep. 293, and Hilliard on

Mortgages, seem to announce the same doctrine. But see *contra*, 3 Sneed (Tenn.) Rep. 191, cited in Burrell on Assignments, a work declared by Chancellor Kent to be accurate and authoritative. In the case in 3 Barbour there was at the date of the mortgage a debt of equal amount to the mortgage, and it was admitted to be intended to secure it. (In this case the mortgage was not so intended.)

The error in the case was in holding that the mortgage could *not be confined to the existing debt*, which had been reduced by payments.

With a notice of a mortgage for an existing debt, creditors were hindered and held off here, as the Tennessee case surmises. Parties selling cotton or goods to the firm, seeing that the cotton is going in large quantities to the creditors in New Orleans, have confidence that the actual debt is daily diminishing; just as a man has confidence to lend money, if he believes it goes to pay off incumbrances on the borrower's property. If, however, the real nature of the mortgage was expressed, showing that it involved all the debtor's property for future dealings and balances, subjecting it to all the accidents of the cotton trade, it is plain parties would not credit the debtor with this undefined risk hanging over his effects. If the unrecorded instrument had been spread upon the record, it would instantly have stopped his credit with cotton planters, and induced creditors to sue immediately.

Shall this double-faced programme prevail, and the parties be allowed to show one face in New Orleans in one controversy, and another in Mississippi?

The deed as to the stock of goods was inoperative as a security or lien, for the plain reason that the parties did not intend that Baggett should be restrained in his power to dispose of them without accountability; which he did. A deed of trust which in no wise restricts the grantor in the use of the property, and leaves him in full power to sell, cannot be a lien on the property. See fully 16 Ohio R. 547.

The conveyance is nothing more than a mere contrivance to cover up property, and shield its owner from honest liabilities —

in common parlance, a "bomb-proof" or "iron-clad;" but it can never withstand an energetic bombardment, for "truth is powerful, and must prevail."

The deed was executed that Baggett might "save something" in event of failure, etc., as the testimony says. Save from whom? Why, from his creditors, of course. Save what? Why, property exempt from execution — property over and above the liberal allowance exempt from execution by our statute. This careful inclusion of all property liable to execution is a badge of fraud. 3 Ohio Rep. 527–532.

Summers intended to secure himself, and at the same time keep Baggett in business, for the sake of profits in cotton factorage, holding out to Baggett the prospect of covering all his property. Baggett yielded to the temptation. The real estate conveyed, together with the cotton on hand, was enough to secure Summers; and why include a "lot of sheep, a "lot of hogs," and a stock of goods worth $35,000, which Baggett was to keep and sell without restraint? The object is too evident. Over $40,000 worth of goods were consumed in his business, which were covered by the deed of trust, and for his benefit. The law will not allow this. A creditor may take security for his debt, but in doing so he must have due regard to the rights of others. 20 Ohio Rep. 540–5; *Driver* v. *McLaughlin*, 2 Wend. 596; *Montgomery* v. *Kirk*, 26 Ala. 172; *Burney* v. *Griffin*, 2 Comstock, 365; *Smith* v. *Leavitt*, 10 Ala. 93; *Walker* v. *Wisner*, 24 Mo. Rep. 63. The attempted transfer before the mortgage matured was admitted by Summers & Brannin to have been designed to avoid attachments, which they feared would be levied. This avoids the transfer. 1 Sto. Eq. 413.

The court below charged that the burden of proof was on the plaintiff to show that the goods were liable to execution; and this was as far as the court could go on the facts. It was sufficient to show that the goods were in possession of defendant when levied on; this creates the presumption that he owned them. The claimant must then show title to specific property, and if by his own proof he shows that part only of the goods

levied on are embraced in his deed, he must show what part; because by proof of possession in the defendant the burden of proof was shifted to him. In this attitude, the court refused the fifteenth instruction — that the plaintiffs must *point out the specific things* not embraced in a deed which speaks nothing. The parties to that deed ought to know what it embraced, and if too vague to identify property, it was too vague for a lien. So the court was right.

No instruction as to the validity of the registry or notice can affect the case. The court could not uphold a contrary verdict. The goods levied on were not the goods mortgaged; the mortgage was ineffectual, and was treated by the parties as creating no lien, and transferring no title.

*W. & J. R. Yerger,* for plaintiffs in error, argued in reply:

It is earnestly insisted by opposing counsel, that Baggett's being permitted to remain in possession of, and sell the goods, prior to the maturity of the note, *ipso facto* avoids the deed as to the personal property; and cite with confidence *Collins & McElroy* v. *Myers et al.,* 16 Ohio Rep. 547. The main facts in that and the case at bar are essentially different. The mortgage in that case contains a power of sale by the mortgagor with possession of the property to be retained by him. In this case, the deed stipulates that Baggett shall retain possession of the mortgaged property till condition broken, but *it contains no power of sale whatever on his part.*

In the Ohio case the power of sale contained in the mortgage was inconsistent with the declared purpose, to wit: that the property should stand as a security for the debt; which could not be if the mortgagor was to sell it, and therefore it was void. But there is no power of sale contained in this mortgage, which is valid on its face, and to avoid it, it must be impeached for fraud by extrinsic evidence. It is valid on its face.

A debtor may prefer any creditor to the exclusion of others, if done without fraud. See fully *Foster* v. *Saco Manufacturing Co. & Trs.,* 12 Pick. Rep. 459, the principles of which

are well settled in Mississippi. It has been held that the retention and use of personal property by the vendor, in the case of an absolute sale, is *per se* fraudulent, and avoids the sale as to creditors and purchasers. But in this State it has been decided that such is not fraudulent *per se*, but only *primâ facie;* which is the general rule in most of the courts in the Union.

But it is well settled in this State, that a retention of personal property by the mortgagor or grantor, with a stipulation that he should so retain it till necessary to use it for satisfaction of the debt, is not even *primâ facie* fraudulent, but being consistent with the instrument, is entirely legitimate. *Comstock* v. *Rayford*, 12 S. & M. 369 ; *Harney* v. *Pack & Clifton*, 4 ib. 229 ; *Bogard* v. *Gardley*, 4 ib. 302 ; *Layson* v. *Rowan*, 7 Robinson (La.) Rep. 21. See particularly *Oliver* v. *Eaton*, 7 Mich. Rep. 108. The deed in this case, then, is not even *primâ facie* void, and there is no extrinsic evidence to prove it so in fact.

True, Summers & Brannin may have *permitted* Baggett to dispose of the property ; but that is not fraudulent *per se*, but a circumstance from which the jury may infer fraud. It may even be *primâ facie* fraudulent, but it may have been innocently or carelessly done, without intention to defraud any one ; and, therefore, is not fraudulent in itself. If they saw that Baggett was selling the goods in good faith, for their full value, and paying the proceeds towards extinguishing the very debt the deed was intended to secure, no one can pretend it was fraudulent.

The question in this case of fraud or no fraud, is a question of fact, to be determined by the jury, not by the court. See *Gilliam* v. *Moore*, 10 S. & M. 130.

The instructions given by the court below being palpably erroneous, and the deed of trust not being void on its face, this court is compelled to reverse the judgment; for the court can not say how the jury would have found, or will hereafter find, on the question of fraud in fact.

Assignments are sometimes drawn with stipulations for the continuance of the debtor's business, and where this is done with

the view of more effectually promoting the interests of creditors, they will be sustained as valid. 5 Eng. L. and E. Rep. 481; 12 Pick. 451; 5 Ala. 297.

It will not be forgotten that Roos & Co. are creditors subsequent to the recording of the deed of trust; and that afterwards, on the sixteenth day of March, 1867, Baggett, by written conveyance of that date, transferred the goods to the trustee, to pay the debt to Summers & Brannin; that the trustee took possession of them, and kept them till the twentieth of March, on which day the attachment was levied on them as property of Baggett. On this state of facts, if it were true that the deed of trust contained a power of sale by the grantor, and was therefore void as to creditors who might obtain a lien while the goods were in the hands of Baggett, and before the trustee took possession, — yet Roos & Co., who only levied their attachment after the trustee took possession, and who were only creditors at large at that time, without a lien of any kind, cannot maintain their right under the attachment. This identical point was decided in the case of *Foster* v. *Saco Manufacturing Co.*, 12 Pick., *supra*, wherein the court cited *Bartlett* v. *Williams*, 1 Pick. 288. That case would be decisive of the one now before the court against the attaching creditors, if the deed had contained the provision, that the grantor should continue to sell till the trustee should take possession, in order to execute the trust; but it contains no such provision. If the deed contained a provision that the debtor should remain in possession, and carry on his business, we could maintain it against the attaching creditors who became such subsequent to the execution and registry, and who therefore dealt with the party with full knowledge of its contents, and of the rights of Summers & Brannin in the premises.

There is a broad line of distinction between prior and subsequent creditors in such a case. But deeds with such provisions have been repeatedly upheld in this country and in England. Burrill on Assignments, 196, and cases cited. But such an inquiry in this case were useless, as the deed contains no such provisions; in fact, nothing obnoxious on its face. It is in

every respect regular and legal on its face, and can only be impeached by evidence *aliunde ;* and there is no evidence of fraud in fact.

But the deed can be left out of contemplation entirely, and the right of the claimant is placed beyond all doubt by the conveyance of Baggett, and the delivery of the goods to him for a debt due Summers & Brannin of $30,000, and in discharge of that debt.

The plaintiffs had no claim or lien on them, but were mere creditors at large when the attachment was levied.

Baggett had a right to pay that debt in money or property, and a right to prefer Summers & Brannin to other creditors.

And whatever objection may be found to the deed, none can be raised as to the transfer of the sixteenth of March.

It is no objection to it that it was done to withdraw the goods from the threatened attachment, for that was only making a preference of creditors. The very idea of preferring creditors contains the necessary intention to place the property in the hands of the preferred creditors. *Tilton* v. *Britton,* 4 Halstead's (N. J.) Rep. 120–136; 26 Penn. (2 Carey) 85; 21 ib. (9 Harris) 495; *Hull* v. *Arnold,* 15 Barb. 599; *Bird* v. *Smith,* 4 Dallas, 76; *Murray* v. *Riggs,* 15 Johns. 571; 2 Pierre Williams, 427. These references might be extended *ad infinitum.*

But among the greatest errors committed by the court was refusing a new trial; for the verdict of the jury is unconscionably excessive, and not at all warranted by the evidence, which is too patent and plain for discussion. And for this alone the case should be reversed.

In addition to the cases heretofore cited, we refer the court to the following, in which the rule is laid down, that a mortgage, to secure future advances to a specified amount, is a valid security as against subsequent incumbrancers for all advances made up to the time of such incumbrances. And it is not necessary that the mortgage should be *expressed* to be security for future advances. *Bull* v. *Fleming,* 1 Beas. 13; S. C., ib. 490; *Burdette* v. *Clay,* 8 B. Mon. 287; *Collins* v. *Carlisle,* 13 Ill. 254; 20 Cowen's Rep. 420; 24 Pick. 274.

SHACKELFORD, C.J., delivered the opinion of the court.

On the 20th day of March, A.D. 1867, the defendants in error filed, in the Circuit Court of Lawrence county, their affidavits, in which it is alleged that William P. Baggett, of said county, is indebted to them in the sum of $5,370.06, and that said Baggett "has property, and rights in action, which he converts, and unjustly refuses to apply to the payment of his debts; that he has assigned and disposed, or is about to assign or dispose of his property or rights in action, or some part thereof, with intent to defraud his creditors, or give an unfair preference to some of them; and that he has converted, or is about to convert, his property into money, or evidences of debt, with intent to place it beyond the reach of his creditors;" and thereupon, the usual attachment was sued out by the defendants in error, against the estate of said Baggett, and placed in the hands of the sheriff of said county, and by him it was levied upon certain real estate and personal property, as the property of the said Baggett, on the 20th day of March, 1867.

On the 30th day of March, 1867, J. J. B. Hilliard made affidavit before the clerk of the Probate Court of said county, that the goods, wares, and merchandise attached as aforesaid by the sheriff, on the 20th day of March, A.D. 1867, under and by virtue of the attachment sued out by defendants in error, against the estate of said Baggett, belonged to him, and that he was the owner of said property as trustee under a deed in trust, executed on the 19th day of December, A.D. 1866, by the said William P. Baggett, to him as trustee, for the use of Summers & Brannin; and prayed for the possession of the property.

Claimant Hilliard executed bond, and the property so attached was delivered up to him by the sheriff.

About the same time, other creditors, who are named in the record, attached the same property as the property of Baggett in controversy in the case under consideration.

An issue was made up at the May Term, 1867, of said Circuit Court, to try the right of property, and the case submitted to a jury. Before the trial of the right of property, judgment was obtained at the May Term, 1867, upon the debt of defendants

in error, and upon the claims of the other attaching creditors of Baggett; all of which judgments were read at the trial.

The jury found a verdict for the plaintiff in attachment, and assessed the damages, or value of property attached, as $11,012.69.

A motion was made for a new trial by the claimant, which was overruled by the court, and exceptions taken to the ruling of the court, and brings the case here by writ of error.

The grounds for the motion for a new trial are:

1st. Because the verdict is against the evidence and instructions of the court.

2d. Because the court erred in refusing to grant the fifteenth and sixteenth instructions asked by the claimant.

3d. The court erred in modifying the instructions asked by the claimant.

4th. The court erred in giving the first, second, and third instructions asked for by the plaintiff in attachment.

The *first* error assigned is the refusal of the court to grant a new trial to plaintiffs in error; which we shall now proceed to consider.

On the trial, the deed in trust executed on the 19th day of December, 1866, by William P. Baggett, to J. J. B. Hilliard, trustee for the parties, was read to the jury with a paper of even date, signed by Summers & Brannin and William P. Baggett; duplicates having been signed, one delivered to Baggett, and the other retained by Summers & Brannin.

In this deed, certain real and personal estate is conveyed, transferred, and sold to the said J. J. B. Hilliard, to secure the payment of a note for the sum of *forty thousand dollars*, executed and delivered by Baggett on the 19th December, 1866, to Summers & Brannin, and due and payable *ninety* days from date, payable at the Canal Bank of New Orleans.

In this deed, conveying real and personal estate to Hilliard, is included the stock of goods, wares, and merchandise then in the store of the said Baggett, in the town of Brookhaven. It is further provided, that in case Baggett failed to pay the said note at maturity, then the said J. J. B. Hilliard is to take pos-

session of the personal estate, and sell that on ten days' notice, and the real estate on thirty days' notice; the cotton embraced in the deed in trust was to be immediately shipped by Baggett to Summers & Brannin.

The concurrent paper above referred to is in substance, that there was a large unsettled balance between said Baggett and Summers & Brannin, growing out of various assignments of cotton by Baggett to them, and various advances of money by them to Baggett; and that they contemplated a continuance of like transactions between them up to the maturity of said note, and it being uncertain what may be the balance due them by said Baggett to them; and that the object of the said note and of said deed in trust, is to secure the balance that may be due by Baggett to Summers & Brannin at the maturity of said note.

It is further provided therein, that Summers & Brannin are to advance to the said Baggett $70 per bale, in cash and groceries for such cotton as he may, before the *maturity* of the said note, purchase or trade for, and consign to Summers & Brannin; it is further provided, that it was not to include any of the cotton embraced in the deed in trust, "or any of the cotton expected of Larkin." It is shown that Baggett owed Gartman & Strickland $1000 for cotton, and "which Baggett is to make all reasonable efforts to pay out of his own means;" if he could not, Summers & Brannin are to advance the amount on the receipt of the cotton.

Summers & Brannin obligated themselves to take up Baggett's acceptances in favor of his New York creditors to the amount of $8000, about to fall due before the 1st of January, 1867, and Baggett's draft in favor of J. Bloom & Co., of New Orleans, for $3500, and pay $500 or $1500 for groceries, Baggett's purchases in December, 1866; all of which are to be placed to the debit of Baggett, on his account with Summers & Brannin.

On the maturity of the said note of $40,000, the said Summers & Brannin are to state the account, and the balance due by Baggett, if anything, to them, "will be the amount due them on said note."

The deed in trust was not recorded until the 30th of January, A.D. 1867.

The contract explanatory of the deed in trust was not recorded.

The first objection urged by counsel for defendants in error against the validity of the deed in trust in the record, is, that it is fraudulent and void as to Baggett's creditors, because the deed did not express on its face that it was "to secure future advances."

Counsel cite 4 Kent's Com. pp. 176–7, for authority in support of this position.   It is laid down in the text referred to "that a mortgage or judgment may be taken and held as a security for *future advances* and *responsibilities*, to the exten- of it, when this is a constituent part of the original agreement; and the future advances will be covered by the lien, in preference to the claim, under a *junior intervening encumbrance*, with notice of the agreement.   The principle is, that *subsequent advances cannot be tacked to a prior mortgage*, to the prejudice of a *bonâ-fide* junior *encumbrancer;* but a mortgage is always good to secure future loans, *when there is no intervening equity.*

"It is necessary that the agreement, as contained in the record of the *lien,* should, however, give all the requisite information as to the extent and certainty of the contract; so that a junior creditor may, by inspection of the record, *and by common prudence and ordinary diligence, ascertain the extent of the encumbrance.*"   "This is requisite to secure good faith, and prevent error and imposition in dealing."

In the case of *Brinkerhoff* v. *Marvin,* 5 John. Ch. Rep. 320, Chancellor Kent, deciding the case, says : "A judgment or other security may be taken and held for *future responsibilities* to the extent of it."   Referring to the case of *Livingston* v. *Mc-Inlay,* 16 John. Rep. p. 165, he says : "The Superior Court observed that if it was part of the original agreement, a judgment may be entered *as a security for future advances beyond the amount then actually due;* in like manner, a *mortgage may be held as a security for future advances.*   The limitation

to this doctrine, I should think, would be, that when a subsequent *judgment* or *mortgage intervened, further advances*, after that period, would not be covered." In this case, the purposes of the judgments were expressly declared by concurrent receipts, and their validity (the judgments) sustained by the Chancellor.

In this opinion, Chancellor Kent cites the case of *Shirras et al.* v. *Craig et al.*, 7 Cranch. p. 34, as authority, and uses this language in reference thereto: " A mortgage should stand, to secure the real equitable claims of the mortgagee, whether they existed *at the date of the mortgage, or arose afterwards, and before notice* of the defendants' equity."

In the case of *Shirras et al.* v. *Craig et al.*, at the time of the execution of the mortgage, Gardiner, the mortgagor, was supposed to be solvent; and the mortgage was executed in part to secure the payment of *money actually due* at the time and in part to *secure sums to be advanced*, and to indemnify some of the mortgagees *for liabilities to be incurred*.

The mortgage was dated the 1st of December, 1801, and recorded on the 14th of September, 1802, and purported, *on its face*, to secure £30,000 sterling, due to all the mortgagees; it was *really intended to secure different sums due at the time* from particular mortgages, and *advances afterwards to be made*, and *liabilities to be incurred*, to a certain amount. Chief-Justice Marshall, delivering the opinion of the court, held the mortgage to be valid, and affirmed the decision of the Vice-Chancellor of Georgia, sustaining the mortgage.

There have been repeated adjudications upon the doctrine announced in these decisions, recognizing and approving it, by many of the most enlightened tribunals of last resort in the Union. *Collins* v. *Castile*, 13 Maine Rep. 254; *Craig* v. *Tappin*, 2 Sand. Ch. 78; *Bank of Utica* v. *Finch*, 3 Barb. Ch. 293; 15 Ohio, 253; 23 Hen. S. C. Rep. p. 14; 30 Barb. 268; *Robinson* v. *Williams*, 22 N. Y. C. A. 380; 23 Conn. Rep. 123; 20 Conn. Rep. 427; *Ball* v. *Fleming*, 1, 1 Beas. p. 13; 24 Pickering, p. 274; 8 Bentham, 287; *Mix* v. *Coles*, 20 Conn. Rep. 420; 36 Penn. State, 170.

These authorities, we think, are conclusive against the objecton, raised by counsel, against the validity of the deed in question; because it is not shown upon its face that it was intended to secure future advances, as well as advances already made.

We are, under this view of the law, unable to concur with counsel for the defendants in error, in his construction of the text above quoted from 4 Kent's Com. pp. 176–7. This refers clearly to the *agreement* entered into between the mortgagor and mortgagee, at the time of the execution of the deed intended to secure future advances: in the use of the language, that "this agreement should give all the requisite information as to *the extent* and certainty of the contract." The distinguished commentator only intended to show what it should contain, *and not that it should be placed upon record* with the deed, or that it should be embodied in the deed. If he intended to convey any such idea, he would not have said, "that a junior creditor may, by an inspection of the record, and by *common prudence and ordinary diligence, ascertain the extent of the encumbrance.*" This language intimates plainly, that the party wishing to deal with the mortgagor has to go farther than the record to ascertain the extent of the encumbrance.

The deed in trust, or mortgage, being on record, showing a lien for a definite amount, places a party upon his guard; "and by ordinary diligence and common prudence" he could readily have ascertained the extent of the encumbrance, by demanding an inspection of the concurrent contract, entered into at the time of its execution by the parties to the deed.

This view of the doctrine laid down in Kent was recognized and affirmed in 3 Barb. Ch. Rep. 293; where the court held that it was a sufficient compliance with the doctrine of notice to record a mortgage *in form,* and state a specific sum therein, because this warns the public to the extent of the lien.

Hilliard, in his work on Mortgages, also adopts this view as a sound rule. Vol. i., § 46, p. 318, and cases cited.

In the case under consideration, Baggett, as well as Summers & Brannin, had duplicates of the concurrent agreement

explanatory of the lien in the deed in trust, which is sufficiently explicit and certain to show the real extent of the lien created in the deed in trust; it is clearly within the rule laid down by Chancellor Kent, previously quoted.

The deed of trust in question was placed upon record on the 30th of January, A.D. 1867, and the defendants in error contracted their debts with Baggett on the 13th day of February, 1867, some fourteen days after the deed was placed upon record. The recording of the deed was notice to the world of the encumbrance upon the property conveyed therein by Baggett to the trustee.

The third instruction given by the court to the jury at the instance of the defendants in error, and excepted to by plaintiffs in error at the time, and made by them one of the reasons why a new trial should have been granted, and one of the grounds of error, in plaintiffs in error's second assignment, is in direct conflict with the doctrine of notice, and of the law relative to deeds and mortgages, to secure future advances to grantors, etc. It is in these words: "A mortgage or deed of trust made to secure future advances must *make that fact distinctly appear on the face of the deed, or it is void,* as between third parties who claim without *actual notice* of the intentions of the grantor and grantee, in the deed of trust."

It was error to grant this instruction.

Another position assumed by counsel, in opposition to the enforcement of the deed in trust, is, that it was inoperative, because the amount mentioned in the note was paid off and discharged before the maturity of the same.

This position is solely maintained upon the assumption that Baggett had shipped sufficient cotton to Summers & Brannin, from the date of the deed in trust to the time of the surrender of the property to the trustee, to pay off the $40,000 note.

It was shown to the jury on the trial, by the testimony of Summers, one of the firm of Summers & Brannin, the *cestui que trusts,* and not denied by Baggett, that the cotton in the hands of Summers & Brannins, at the time of the execution of the deed in trust, was *encumbered* with an advance of $70 per

bale, and the United States tax; and in addition to this, that Baggett owed them $60,000 for cash advances previously made to Baggett. Summers & Brannins assumed and paid $8000 of Baggett's acceptances in favor of his New York creditors, and the sum of $3500 to J. Bloom & Co., of New Orleans, for groceries, and $500 more for balances due in New Orleans for groceries, etc.; and by the contract, Summers & Brannin advanced $70 *per bale* on all the cotton subsequently shipped by Baggett to them. The overplus arising above these advances only reduced the $40,000 note $9,139.60, leaving a balance due Messrs. Summers & Brannin, at the maturity of the note, of $30,860.46, on the 16th day of March, A.D. 1867.

The facts developed by this testimony do not warrant this assumption, as there was *no agreement* that this overplus should be applied in the way contended for by counsel.

If the deed in trust under consideration was made *bonâ fide*, and with no intention to hinder, delay, or defraud existing creditors, as was stated by Mr. Summers and Mr. Baggett to the jury, one being a *cestui que trust*, and the other the grantor in the deed, and was valid at its creation, it cannot be affected by subsequent events; and no subsequent fraudulent or illegal act of the parties can invalidate it. Burrill on Assignments, p. 442.

But it is insisted by counsel that the deed in trust is void on its face, because the grantor, Baggett, was permitted to remain in possession of the personal property intended to be transferred by the deed, including the stock of goods, etc., and to sell them, from the date of the deed to the maturity of the note, and cites us to the case of *Collins & McEvoy* v. *Myers et al.*, 16 Ohio Rep. 547. There is a material difference between the mortgage in the Ohio case, and the deed under consideration: in the first there was a power of sale *expressly given* to the mortgagor; in the other, the property was only permitted to remain in the possession of Baggett *until the condition of the deed was broken*, and contains no power of sale to Baggett, expressly or directly given.

In their adjudication upon the mortgage in the Ohio case, the court held that:

The *power of sale contained in the deed* was inconsistent with the declared purposes of the deed; that property stood as a security for the debt; which it could not be if the mortgagor was to sell it, and therefore void.

But as there is no power of sale in the deed under consideration given to Baggett, we do not consider it void upon its face; and to have it declared void it must be impeached for fraud, by extrinsic evidence, and can be avoided by showing it was given to hinder, delay, or defraud creditors.

This court has decided that the retention of personal property by the vendor in the case of an absolute sale, is not *per se* void, but only *primâ facie* fraudulent. *Comstock* v. *Rayford et al.,* 12 S. & M. p. 369. And such is the general rule in most of the courts of the Union.

But it has been repeatedly decided by this court, that in the case of a deed in trust or mortgage, a retention of personal property by the mortgagor or grantor, and a *stipulation in it that he should retain possession until, by the terms of the deed, it should be surrendered for sale,* for the satisfaction of the debt secured, is not *primâ facie* fraudulent, but, being consistent with the instrument, is entirely legitimate and proper. *Bogard* v. *Gardly,* 4 S. & M. 302; *Harvey* v. *Park,* 4 S. & M. p. 229. In the latter case, the grantor, Wall, executed a deed in trust to indemnify his securities, on an administration bond; and conveyed to Park & Clifton all his land and negroes, all his household and kitchen furniture, his horses and mules, and farming utensils, and crops of cotton to be afterwards raised, with a reservation to himself of possession of the property.

.But it is insisted by counsel, that inasmuch as the evidence showed that Summers & Brannin *permitted* Baggett to sell and dispose of the goods, wares, and merchandise in the deed, this fact of itself is *per se* fraudulent.

It may be a circumstance, from which a jury might infer fraud, and it may be *primâ facie* fraudulent, or it may have been innocently or carelessly done on the part of both contracting parties, without an intention to defraud any creditor;

and the question, whether there was a fraudulent intent in the creation of the deed, was a question for a jury alone (where the deed was not fraudulent upon its face), and the court could not determine it.

Keeping in view the principle, that if there was no fraud in the creation of the deed, if the grantor Baggett had paid the proceeds of the goods sold by him, embraced in the deed in trust, to the extinguishment of his indebtedness to Summers & Brannin, were they not legitimately applied? If they were not applied to the payment of Baggett's debts to Summers & Brannin, they were the only parties defrauded. Certainly, if Baggett had sold all the goods embraced in the deed, and applied the proceeds to the extinguishment of his indebtedness to Summers & Brannin, defendants in error could not complain, and they could not set up this fact to show a fraudulent intent to defraud them on the part of Baggett, or the *cestui que trusts* in the deed.

In the case in 16 Ohio, above referred to, the court says: "That the mortgagee should permit the mortgagor to transact business for his own benefit, and not *proceed* to collect the *mortgaged debt, would not be evidence of fraud* which would authorize the mortgagee to be defeated, upon the ground that it hindered or delayed creditors; because the mortgage may have been honestly executed, and simple generosity, or good nature, or carelessness *in delaying* the collection of a debt, could not be regarded as *a fraud which* would defeat an honest security."

In the case at bar, there was no delay on the part of the *cestui que trusts* to have their deed enforced; they proceeded to have it executed by the consent of Baggett before the maturity of the $40,000 note, it having been shown that Baggett ceased to ship any cotton to Summers & Brannin after the 1st of February, A.D. 1867. Still, Summers & Brannin, carrying out their contingent obligation to pay the balances to be paid Gartman *et al.* in their contract, in the failure of Baggett to pay out of his own funds, transmitted $3000 for that purpose to Baggett, after Baggett ceased to ship cotton to them.

Shortly after this time, the *cestui que trust* opened nego-
tiations with Baggett, to get his consent for the sale of the
property embraced in the deed, previous to the maturity of the
$40,000 note. This consent was not procured until the 16th of
March, 1867, when Baggett made and executed, in the pres-
ence of witnesses, a transfer of all the goods in his storehouse
to J. J. B. Hilliard, the trustee, and with the transfer deliv-
ered possession of the goods in the presence of witnesses.
*Delay* cannot be urged as a ground of fraud, in connection
with the permission of Summers & Brannin to Baggett to sell
the goods, as was urged in the Ohio case.

As we have before stated, the question arising out of the
circumstances under which the deed in question was executed,
is one of fraud or no fraud against the defendants in error,
and a question of fact for the jury, and not for the court.

This court, in the case of *Gilliam* v. *Moore,* 10 S. & M. 130,
has held that it is erroneous for the court to assume that fraud
in fact exists, and this error will not be cured because the
record seems to make out a case of fraud; the jury have a
right to pass upon the question, and it is neither for the court
below nor the High Court of Errors and Appeals to preclude
them from the inquiry. Ib. 130.

It will be observed that Hilliard, the trustee, had been in
possession of the goods, etc., four days before they were at-
tached by defendants in error as the property of Baggett.

On this state of facts, if it were true, that deed contained
a power of sale by the grantor, and was therefore void as to
creditors who might obtain a lien upon the goods while in the
possession of Baggett, and before the trustee took possession,
yet Roos & Co., who only levied their attachment four days
*after* the trustee took possession, and at that time being cred-
itors at large, without a lien of any kind, cannot maintain
their right under their attachment levied after Hilliard, the
trustee, had obtained possession, under the transfer executed by
Baggett on the 16th day of March, 1867.

The identical question was decided in the case of *Foster* v.
*Saco Manufacturing Co.,* 12 Pickering, 451. In that case the

deed in trust stipulated that the grantor should remain in possession of all the property, *and sell and dispose of all the personal property, according to the usual course of their business, unless* the trustee should be of the opinion that the safety of creditors required them to take immediate possession. Chief-Justice Shaw delivering the opinion of the court, said that "the first obvious remark upon the facts of the case is, that the assignment, as to the personal property, was inoperative, and void against *any creditor who should have attached before the trustee took possession.* The stipulation that the vendors should remain in possession, and have the use of the property, would have rendered it void as against creditors.

"But it was a good executory contract, and when the property was actually taken in pursuance of its terms, the sale became complete.

"The possession accompanied and followed the deed." *Bartelle* v. *Williams*, 1 Pick. Rep. p. 288.

The deed also contained a provision that after-acquired property should be subject to its provisions, on a contingency and for certain purposes expressed in it. Speaking in reference to such property, he says: "The same principle applies to the property to be acquired after the date of the deed.

"It was a good executory contract between the parties *for a future sale*, by deed, to take effect and become executed upon a contingency. The possession was taken pursuant to the contract, and *with the consent of the vendors*, the sale, as between the parties, was complete."

He then proceeds to declare that the attaching creditors had no right to interfere.

This case would be decisive of the one now under consideration against the defendants in error, even if the deed contained an express stipulation that Baggett "should continue to sell the goods embraced in the deed in trust."

The doctrine announced in the cases in 1 and 12 Pick. Rep. 288 and 451, is clearly applicable to the state of facts existing at the date of the levy of the attachment of defendants in error, the sale having been complete to the trustee

before that time. The deed is regular on its face, and if impeachable for fraud, it had to be done by testimony *aliunde* the deed.

What the jury might have found on an issue to that effect, this court cannot know. They are precluded from the privilege of determining that question by the first and third instructions given to them at the instance of the defendants in error. The first is in these words: "If the jury believe from the evidence that the deed in trust in question was made with a view of protecting Baggett *in any way* from his creditors, it is void, and the claimants acquired no right under it, and they should find for the plaintiffs."

The rule announced in this instruction is too broad, and could do nothing less than mislead the jury.

The court omitted to state in the instruction the *fraudulent intent*, which is essential to avoid conveyances of this kind. Baggett had a right to prefer his creditors. Summers & Brannin were his creditors to the extent of a cash balance due them of $60,000, and it was lawful to secure them for this indebtedness, and for that he was about to create with them, by conveying his property for that purpose; if the conveyance was made for this purpose, and not with the intent "to hinder, delay, or defraud" his other creditors, the conveyance is valid, although it was made to protect Baggett's property from other creditors. That being the object and purpose for which assignments are made preferring creditors, any incidental protection the deed in question may have given Baggett from his creditors, until condition broken, certainly would not render it void as to *subsequent creditors*.

The old common-law rule, holding that a deed fraudulent as to existing creditors is fraudulent as to subsequent creditors, has to be considered in connection with our Statute of Frauds, which modifies it. It declares, that such conveyances shall only be void as against those who are delayed, hindered, in the collection of their debts, etc.

This statute has been repeatedly construed to apply only to *existing creditors* by this court. In the case of *Bullett, Mil-*

*ler & Co. et al.,* v. *Taylor & Richardson et al.,* 34 Miss. Rep. 708, the judge delivering the opinion in that case says : " If it were now an open question, the language would seem to be too clear to admit of construction. The conveyance is void as to all who are, at the time of its execution, in a situation to be injured by it, but valid as to all others. It operates to transfer the property, but transfers it with the incumbrance of the grantor's debts then existing." This adjudication was made upon the statute in Hutch. Code, 638.

No subject has given rise to a greater number of decisions, nor to a greater variety and conflict of judicial opinions, than the construction of the statute 13 Eliz., of which most of the Statutes of Frauds of the different States of the Union are substantial copies. The statute in Hutch. Code, p. 638, adjudicated upon by this court in the case of *Bullett, Miller & Co.* v. *Taylor et al.,* is nearly a transcript from that of 13 Eliz.

The rulings of this court upon this statute, as to the effect of it upon the *rights* of *subsequent creditors,* where the deed has been declared void as to existing creditors, have not been uniform.

In the case of *Henry* v. *Fullerton,* 13 S. & M. 634, which was a case of a subsequent creditor, the court held " that if a subsequent creditor can show *actual fraud* as to existing creditors, the deed would be void as to such subsequent creditor."

In 14 S. & M. 142, the court, quoting *Henry* v. *Fullerton,* the above language, said, " The language is very general, and it is difficult to extract any entirely definite rule. It seems, however, beyond doubt, if the party is *insolvent at the time of making the voluntary conveyance,* it is void as to subsequent creditors." In the case of *Winn* v. *Barrett,* 31 Miss. Rep. 657, this rule is modified in this case, the court holding, that "if it do not appear that the debts existed at the time the disposition of the property was made, the transaction cannot, as a general rule, be said to be fraudulent as to creditors," and giving the same construction to the statute as in the case of *Bullett, Miller & Co.* v. *Taylor & Richardson et al.* Judge Fisher, delivering the opinion of the court, goes on to say : " It is true

that it has been held in some cases that where a conveyance by a debtor was fraudulent in its inception, as to his creditors, at the time, it will be so treated as to subsequent creditors. But these cases must rest upon one of two principles: the property was either so situated that it enabled the debtor to obtain credit upon the faith of it; or the fraudulent vendee was regarded as trustee under the secret arrangement between the parties, and in virtue of such secret understanding, bound, at least so far as his word or such contract could bind him, to account to the fraudulent vendor; and hence the creditor was allowed to be substituted, to what was treated as the substantial interest of his debtor, and subject the property to the payment of his debt."

The statute in Hutch. Code, p. 638, quoted in the foregoing cases, is literally copied into the Rev. Code, p. 358, art 2. But it seems, with a view to settle for the future the construction of our Statute of Frauds *relative to subsequent creditors*, in art. 3, p. 359, Rev. Code, the legislature, after quoting the statute from Hutch. Code, further restricts the general rule, and declares: "Nor shall it *in any case* extend to creditors whose debts were contracted after such fraudulent act, unless made with *the intent to defraud them*; and though a conveyance or contract be decreed void *as to prior creditors*, it shall not on that account be void as to subsequent creditors or purchasers."

There was no controversy between the *cestui que trusts* in the deed under consideration, *and prior creditors*. It was attached on the ground that it was fraudulent as to subsequent creditors. Under the Statute of Frauds, unless defendants in error could show that the deed was executed by the parties to it, "with the intent" to hinder, delay, and defraud them, they had to fail in their attachment on that ground.

The grantor, Baggett, and Summers, one of the *cestui que trusts*, who had the deed prepared, testified before the jury, that the deed was made *bonâ fide*, and with "no intent to defraud any one." This testimony, taken in connection with all the circumstances at the time of its execution and subsequent thereto, having any legal bearing upon the case, or in any wise tending

to show a fraudulent intent on the part of the parties to the same, to defraud the defendants in error, was for the consideration of the jury alone.

This instruction, we think, was clearly in conflict with the provisions of art. 3, Rev. Code, above referred to, and unwarranted by the testimony.

The second instruction does not announce the law correctly, and is indefinite, and in conflict with the provisions of art. 3, Rev. Code, above quoted.

We are therefore of the opinion that the second assignment is well taken.

We now come to the consideration of the third assignment of error. It is, that the court erred in refusing the fifteenth and sixteenth instructions asked by plaintiffs in error.

The fifteenth instruction is as follows: " That the plaintiffs in execution, A. Ross & Co., are bound to make out their case, and to show by testimony that the certain property levied upon is subject to the attachment; and if they shall believe from the evidence that only a portion of the property is so subject, and that the plaintiffs have failed to show by testimony what specific portion or articles are so subject, then they should find a verdict for the claimant."

It is insisted in behalf of the defendants in error, that this instruction was properly refused, as the rule in claimant cases is, that it is sufficient for the plaintiff in execution or attachment to show that the goods were in the possession of the defendant when levied on; and that creates the presumption that the ownership is with the possession, and that the claimant must then show title, etc.   This is a sound rule; but to make it applicable to the case under consideration, the plaintiffs in attachment or execution had to show that the goods attached were in the possession of Baggett at the time of the levy.

The proof was undisputed, that on the 16th of March, A.D. 1867, the entire stock of goods levied upon by defendants in error, under their attachments, had been transferred to Hilliard, the trustee, and that he had remained in undisturbed pos-

session of them from that time up to the 20th of March, 1867, the day of the levy.

To do away the effect of this testimony, counsel insist that the grantor Baggett's statement, that Summers & Brannin were to pay him $3000 to pay balances due Gartman *et al.*, rescinded the contract of delivery to Hilliard.

Summers stated he had transmitted this amount about the 1st of February, 1867, to pay these balances, and explains the subsequent promise to Baggett to pay these balances, by stating that it was contemplated by the parties to sell the stock of goods to one Millsaps. This sale fell through. If it had not fallen through, *three thousand dollars' worth of notes* of Millsaps were to be transferred for that purpose. This promise does not appear in the written transfer to Hilliard, the trustee. If it depended upon the condition stated by Summers, and was to be paid only in case the sale was made to Millsaps, this transfer could not be affected by the failure of Millsaps to purchase the goods. But if this sum was to be paid in any event, then Baggett can hold Summers & Brannin liable to pay the $3000 for the use and benefit of Gartman *et al.* It is a matter the defendants in error cannot avail themselves of to avoid the transfer to Hilliard, the trustee. It is a contract entirely between Summers & Brannin and Baggett, with which the defendants in error are not in any wise pecuniarily interested.

It was purely a question of fact for the consideration of the jury, whether Hilliard was in possession of the goods, by virtue of the written transfer of the 16th of March, 1867, from Baggett to him, on the 20th day of March, 1867; and if they believe that possession was complete in Hilliard, it was incumbent upon the plaintiffs in attachment to show what property levied upon was subject to their attachment.

For these reasons, we think the proof in the case warranted the instruction, and it should have been given, and it was error to refuse it.

The giving or the refusal of the sixteenth instruction, in either event, could not have affected the verdict of the jury.

The twelfth instruction given for the claimant is in effect the same as the sixteenth instruction; in the absence of the twelfth, the sixteenth should have been given.

We have arrived at the fourth and last assignment of error, which is, "that the court erred in modifying the sixth instruction asked by plaintiffs in error, and giving the same as modified, and refusing to give the same without modification."

The modification complained of is in these words: "If the note it was intended to secure was for debts then due." We think this modification was erroneous, for the reasons given in our consideration and disposition of the question raised upon the third instruction given for the plaintiffs in attachment; the instruction should have been given without modification, and it was error to refuse it.

It necessarily follows, from these views of the questions considered, that the verdict must be set aside.

Let the judgment be reversed and a new trial awarded.