JOSEPH BAUM v. A. PEARCE & Co.

1. ASSIGNMENT FOR CREDITORS. *Ambiguous provision. Ut res magis valeat quam pereat.*
   A provision that the assignee is "to dispose of for cash or otherwise, as is customary or according as the law directs, or shall be agreed upon by a majority of the said creditors," all of the property, conveyed does not render an assignment void. Under the maxim *ut res magis valeat quam pereat,* an interpretation will be given to the ambiguous language that will uphold the instrument.

2. SAME. *Retention of property by grantor. Vitiates general assignment. Intent.*
   One cannot assign his property for the benefit of creditors and yet hold and control it. If the grantor in a general assignment retains and controls certain of his choses in action which the deed recites are held by certain creditors as collateral security, the assignment will be void. In such case his motive in withholding the assets is immaterial.

FROM the circuit court of Covington county.

HON. A. G. MAYERS, Judge.

Appellant, Baum, sued out an attachment against Pearce & Co., who traversed the grounds of attachment. On the trial of this issue, the plaintiff introduced an assignment for the benefit of cred-

itors made by the defendants shortly before the suing out of the attachment, and he relied on the provisions of this instrument and certain facts proved in connection therewith to sustain the attachment. The court refused to instruct the jury for plaintiff that the assignment was on its face fraudulent and void.

The following instruction asked by plaintiff was also refused :—

" If the jury believe from the evidence .that said defendants stated in their assignment .that .certain notes were held by A. J. Weems, and by J. T. Hardie & Co., and Meridian Fertilizer Factory, when at that time the parties did not so hold said claims, and that these facts, with the circumstances detailed before the jury, were such as to reasonably convince the plaintiff or any of the creditors that the transactions of defendants were .fraudulent, and that they intended to defraud their creditors or any of them, or to hinder or delay their creditors, or any of them, in the collection of their just debts, then plaintiff had a right to sue out the attachment, and the jury will find the attachment rightfully sued out."

Among others, the court gave the. following instructions for defendants :—

" The fact that Albert Pearce, of .A. Pearce & Co., secured the debt of Jack Fairly to Pearce & Co. after the date of the assignment ; the fact that he lost or mislaid what is known as the fertilizer notes before the assignment, and after finding them returned them to the assignee after the assignment; the fact that he delivered to witness, Austin, notes collaterally to secure A. J. Weems in his debt, and the fact that A. Pearce & Co. may have misstated the amount of their indebtedness to John T. Hardie & Co. do not establish fraud, if the jury believe from the testimony that there was no actual intent on the part of Albert Pearce to defraud his creditors."

" The actual intent to defraud some creditor must be proven by the testimony to have existed in the minds of Albert Pearce or Ben Leonard before the jury under the law can find that the attachment was rightfully sued out."

Verdict and judgment for defendants. Motion for new trial

overruled : plaintiff appeals. A further statement of the case is contained in the opinion.

*Nugent & McWillie,* for appellant.

1. An assignment which tends to hinder or delay creditors is void. Where the delay is by the will of the grantor, and the obstruction to creditors is stipulated for in the deed, it is fraudulent. The provision in this assignment giving the assignee power "to dispose of for cash or otherwise as is customary, or according as the law directs, or shall be agreed upon by a majority of said creditors of all said property," etc., renders it void. *Polkinghorne* v. *Martinez,* 65 Miss. 272. An assignor cannot impress his will upon the future management of the trust estate to the injury of creditors. *Richardson* v. *Stapleton,* 60 Ib. 112.

The assignment further directs the assignee, after paying expenses and compensation for his services in settling said business, and otherwise on account of said business, then to pay the balance of the proceeds of said property, evidence of debt, etc., of every description as heretofore and *hereafter* described, to the creditors in just proportion according to the amounts of their claims *pro rata.* We contend that the operative effect of these provisions would necessarily be to hinder and delay creditors. In addition to the above authorities, see *Mattison* v. *Judd,* 59 Miss. 99.

The trustee takes the assigned property with all the limitations appearing on the face of the deed. It is the measure of his right and power in dealing with the estate. No court can relieve him from compliance with it, or substitute its judgment for his own.

The assignment here does not give the right of control to the majority in number and amount, but simply to a majority of the creditors, and, too, there may be a majority in this case representing only about one-twentieth of the secured indebtedness. By their direction the trust estate can be disposed of "for cash or otherwise, as is customary." These creditors have it in their power to postpone indefinitely the settlement of the estate, and so to delay the other creditors as to necessitate such settlement or compromise as they may demand. The assignee is not vested with the full power

of disposition, but is subjected to the will of the few which he must obey, even though he is required to sell on five years' time without interest. In this way the assignor impresses his will on the instrument; but he goes further and reserves to himself the power "hereafter" to prescribe to the assignee how he shall "pay the balance of the proceeds of sale" of the effects.

2. This construction finds support in the subsequent conduct of the assignor who retained and otherwise disposed of some of the assigned notes, subsequent to the date of the assignment. The schedule describes these notes, which aggregated about $1100 in amount, as being held by Weems, Hardie, and others as security for their debts, when in fact they did not hold them, but they were held by the assignor himself. It is not allowable for the assignor thus to reserve the control of the property which he has professed to convey for the benefit of creditors. Any such duplex contrivance is a sham and a fraud, and necessarily operates to hinder and delay creditors.

We insist that the jury should have been instructed that the assignment was fraudulent on its face. In any event, the jury should have been instructed that if the grantor, while purporting to convey all of his property, retained control of a portion of the assets, dealing with it as he saw proper, this made the transaction fraudulent in fact.

*A. C. McNair,* for appellee.

In the court below counsel for plaintiff sought to have the assignment declared fraudulent and void because of the use of the words "in consideration whereof, the said J. A. Napier, assignee, is to dispose of, for cash, or otherwise, as is customary, or according as the law directs, or as shall be agreed upon by a majority of said creditors." I am at a loss to know what was meant by these words, or what was the purpose of inserting them in the assignment. The most that can be said of the provision is that it vests discretion in the trustee to sell for cash or on credit. He is not *required* to sell on credit. If the assignee had no discretion in the matter, the assignment might be void. *Richardson* v. *Marqueze*, 59 Miss. 80.

If the assignment is ambiguous, the additional clauses may be treated as surplusage, and, under the maxim *ut res magis valeat quam pereat,* the instrument will be upheld.    *Mattison* v. *Judd,* 59 Miss. 99 ; *Richardson* v. *Marqueze, supra.*

Considering the instrument as a whole, it is manifest that the sole purpose of the assignors was to transfer the property for the benefit of their creditors.    Unless the court can say that its effect is to hinder, delay or defraud, it will be held valid.

WOODS, C. J., delivered the opinion of the court.

The construction which we have placed upon the deed of assignment forbids our declaring it void upon its face.    The deed of assignment, after conveying the estate to the assignee, directs him " to dispose of for cash or otherwise as is customary or according as the law directs, or shall be agreed upon by a majority of the said creditors all of said property, etc." The wording is not precise, and the meaning is not free from obscurity, but we must give it such interpretation, if it may be done, as will not destroy the instrument.    The maxim *ut res magis valeat quam pereat* is of force in this case of ambiguous interpretation, and must control.    We take it the meaning is, that the assignee may sell for cash, or on time, as is customary in cases of assignments, or as the law directs in such cases, or that he may sell for cash, or on a credit, as a majority of all the creditors agree.    The phrase will bear this interpretation, and this will render the deed free from objection, and we therefore so construe its language.

The deed of assignment conveys, or purports to convey the entire estate of the assignors, including the accounts, notes, and other choses in action of the assignors' mercantile firm, and refers to schedule B, attached to the deed, as containing an accurate list of such choses in action.    In this schedule certain notes are mentioned as being held by A. J. Weems, Jno. T. Hardie & Co., and the Meridian Fertilizer Company, as security for debts due them respectively by the assignors.

On the trial of the plea in abatement interposed by appellees, in the court below, it was shown by some of the evidence, that these

notes, named in schedule B as being held by the creditors mentioned were in fact not held by them, but were held by Pearce, the assignor, and were retained by him, and controlled by him at and subsequent to the execution of the deed of assignment. If this holding by Pearce, the assignor, had been satisfactorily established, then, without regard to Pearce's intention in so holding the notes, the deed of assignment was constructively fraudulent, and the jury should have been so instructed. In that state of the case, the question of Pearce's intention was not decisive at all; the decisive test was, did or did not Pearce hold and exercise his will in the control of these notes, or any of them, after the deed of assignment had been executed? If he did, then the deed was fraudulent in law, no matter what Pearce's motive was, and the jury should have been so informed. A person cannot assign his property for the benefit of creditors and yet hold and control it, even with the best intentions.

*Reversed and remanded.*