UNION & PLANTERS' BANK v. THOMAS H. ALLEN ET AL.

1. ASSIGNMENTS FOR CREDITORS.   *Aiding deeds.*

Where an assignment for the benefit of creditors and deeds executed in aid of it are in contemplation of law but one instrument, it is immaterial whether the assignment conveyed only personalty, the aiding deeds alone conveying the land, or whether the assignment conveyed both species of property.

2. SAME.   *Composition.   Revocation.*

Where an assignee in an assignment for the benefit of creditors has been invested with the legal title to lands and personalty and afterwards, in pursuance of a composition agreement made between the assignors and their creditors, surrenders possession of and delivers up the personalty, retaining title to the land, the assignment is revoked as to the personalty but not as to the lands, if the composition agreement expressly provides that the assignee shall retain title to the latter until the payment of notes given for the debts sought to be secured.

3. SAME.   *Assignor as agent of assignee.*

If an assignment executed by the members of a co-partnership for the benefit of co-partnership creditors be so modified by a composition agreement between the assignors and their creditors as to constitute the assignors (who are thoroughly familiar with the lands conveyed and their environments and

capable and efficient to perform the service) the agents of the
assignee to negotiate sales of the lands, power being reserved
in the assignee to consummate or reject such proposed sales,
this does not render the assignment void as to a creditor of
one of the partners.

4. SAME. *Extension of time to perform trust.*

An extension of time to an assignee in an assignment for the
benefit of co-partnership creditors in which to perform his trust,
if made by a composition agreement between the assignors and
their co-partnership creditors, does not, where the extension is
reasonable, necessary and incidental to a proper discharge of the
trust, render the assignment void as to a creditor of one of the
partners. And if the circumstances are unusual an extension of
two years on a part of the debt is not necessarily unreasonable.

5. EQUITY PROCEDURE. *New contention.*

If a suit in equity by a creditor of one of several partners be
prosecuted wholly on the idea that an assignment for the ben-
efit of co-partnership creditors and deeds in aid of it are
fraudulent and void until adjudged valid by the supreme court
upon a first appeal, and when remanded to the court of original
jurisdiction is then prosecuted wholly on the idea that the
deeds were revoked by composition articles between the as-
signors and the co-partnership creditors until this contention
is denied by the supreme court on a second appeal, the com-
plainant will not be allowed, on a reargument of the second
appeal, to change the base of his contentions and insist, outside
of his pleadings and the scope of the prayer of his bill, that the
composition agreement constituted a mortgage, and as such is
void under the registry laws.

6. SAME. *Supreme court practice.*

In such case the new claim of the complainant may be made the
basis of an original suit; and the supreme court will, the claim
not being manifestly without merit, so frame its decree of af-
firmance as to prevent embarrassment in its prosecution.

7. ALLEN *v.* UNION BANK, 72 MISS., 549.

The former decision of this case (72 Miss., 549) did not adjudge
that the composition agreement revoked the assignment *in
toto.*

FROM the chancery court, first district, of Coahoma county.
HON. A. H. LONGINO, Chancellor.

The Union & Planters' Bank, the appellant, was the com-

plainant in the court below; Allen and others were defendants
there.   This case must be read in connection with a former
report of it, *Allen* v. *Union, etc., Bank,* 72 Miss., 549, where
the facts are fully stated in the opinion of the court then de-
livered.   The opinion of the court on this appeal states the facts
touching the further progress of the litigation, and out of which
arose the controversies involved on last hearing.

*Cooper & Waddell,* for appellants.

We concede that the validity of an assignment is determin-
able by the conditions existing at the time of its execution;
that an assignment valid where made cannot be made invalid
*ab initio* by any subsequent conduct, either of the grantor, the
trustee, or the beneficiaries.   Such conduct, if it injuriously
affects the right of others, may give rise to actions competent to
give redress for the injury, but cannot avoid the deed.

But the parties to a conveyance may abandon the scheme it
provides, and this may be either by contract or by conduct.   We
need not cite authorities, we are sure, for this statement.   Bur-
rill on Assignment, sec. 330; *Small* v. *Sprout,* 3 Met. (Mass.);
303.

It is too clear for contention that all parties to the assign-
ment substituted for it a totally different scheme than the one
it provided; they abandoned and canceled the original assign-
ment, and can no longer claim under it.   *Gergenhiemer* v.
*Groschel,* 23 S. Car., 274.   The assignment was for the present
payment of debts; the composition agreement was to postpone
the maturity even of any debts, with an effort to secure their
ultimate payment.   Without changing the nature of the con-
veyance of the legal title to land, the effort was to change the
purpose to which it should be applied.

In *Virden* v. *Robinson,* 59 Miss., 28, this court decided that
a judgment (intended by the law as the means of coercing pay-
ment) could not be used as a mere security, and that where

a judgment was being so used, the right of an intervening creditor was superior to the judgment.

When a conveyance is void by the laws of the state where made, it is void everywhere. It may be valid where made, and not valid in another state whose policy forbids its execution. It is entirely certain that property worth $1,319,459.99 was dealt with by the parties to secure a total indebtedness of $684,850.61 and two years extension given to the debtor.

In Tennessee a delay of this kind may be given if property not greatly in excess of the debt is incumbered; but if too much property is covered, the mortgage is void. *Fertilizer Co.* v. *Thomas,* 97 Tenn., 478; *Mitchell* v. *Beal,* 8 Yer., 134.

The idea was to set Allen & Co. again on their feet, and let them try the experiment of recovering their position in the commercial world by spreading their debts over a period of two years; but while this was being done the assigned estate was to stand practically pledged to the original creditors if the experiment should fail. The estate of Allen & Co. was thus to be protected against all other creditors. Until it should be known whether the obligations assumed under the composition agreement could be met, other creditors were to be kept off. They were, in effect, to bear the burden of the experiment, and were to have nothing unless it should be successful. Clearly, neither the assignee nor the beneficiaries in the assignment could, after the composition agreement had been made, interrupt the scheme. There could in truth be no execution of the original assignment, for that had been abandoned by all parties to it, and a new scheme put in operation. What was principally to be done was precisely what this court condemned in the case of *Summers* v. *Roos,* 42 Miss., 782. Not only was the new arrangement unjust and illegal as to other creditors, under the decision of the supreme court of Tennessee in the case of *Mitchell* v. *Beal* and the Mississippi case just cited, but it was void because the scheme was in hostility to the rights of all creditors.

It was invalid for another reason, which is that it was an effort to convert a deed of assignment for the payment of debts into a security for the ultimate protection of those and other debts without the execution of another deed. The legal title which had been conveyed for one purpose was stipulated should be held for another, and this was done by mere negotiation taking the form of a simple contract. It was an effort to declare a trust in the lands inconsistent with the purposes for which they had been conveyed.

The statute declares that declarations of trusts "shall only take effect from the time it is lodged for record," and in this case this declaration of trusts never was recorded, and never has been recorded to this day.

*Frank Johnston,* on same side.

It is a doctrine of universal acceptance that a contract, in respect to its validity, is governed by the *lex loci contractus. Brown* v. *Nevitt,* 27 Miss., 801; *Ivey* v. *Lalland,* 42 Miss., 444; *Scudder* v. *Bank,* 91 U. S., 406, 412.

The composition agreement either had the effect of vacating and annulling, or of modifying the assignment.

If the assignment stands as an assignment as modified by the December agreement, then it stands as an assignment of the lands with this reserved power of sale in the grantor, and in its new form is invalid as to creditors.

On the other hand, if the assignment has been abrogated, and the lands stand under the new agreement as a security, by way of equitable mortgage, for the favored creditors, it is equally invalid because of the illegally reserved powers of sale in the grantor. Such a stipulation is not simply ineffectual, but it invalidates the entire instrument.

*Mayes & Harris,* for appellees.

Unless we totally misconceive the drift of the argument of appellant's counsel, it amounts to this:

Proposition 1. The composition agreement of December 20 totally abrogated the deed, or deeds (either or both), of November 25.

Proposition 2. That the composition agreement so totally changes the nature of the transaction and the rights of the parties as to constitute a totally different contract.

With no sufficient declaration of the new trusts made, under our statute of frauds; and, secondly, that if such declaration is made, it is by no instrument recorded in Mississippi, of which appellant had notice.

We deny the first proposition of counsel. The effect of the composition agreement was not totally to abrogate the assignment, considered as an assignment.

The effect of that agreement was, so far as the lands are concerned, only to make some minor arrangements of detail in respect of the ways and means of disposing of them for the purpose of liquidation of the liabilities of the firm as originally contemplated in the assignment; that, as to the lands, the substantial aim of the assignment remained, and the modification attached only to the detail of ways and means.

It is perfectly manifest from the instrument that the power given the assignors to mortgage or sell the land was to do so merely as assistants, or aids, to the trustee. Not originally. Their old business relations, their great familiarity with and knowledge of the lands, their knowledge of the people who would be likely to buy the lands, all these things made it exceedingly desirable that their powers of disposition, and their ability to make sales, should be placed at the services of the trustee; that was what was provided for.

It is immaterial whether the composition agreement be treated as an assignment or a mortgage, it is still valid, and counsel have shown no cause why it should be avoided. They propose to argue that the agreement of December 20, being taken as an initial point, and treated *de novo*, was void as against them for want of a sufficient declaration of trust, and

want of record, etc. But we have already pointed out the fact that no such case is made by the record, and the appellant cannot undertake to win a cause in this court by presenting a claim for the first time, and, moreover, a claim inconsistent with that presented in the court below. Counsel assert that under the composition agreement· the trustee's authority to sell was taken away because he was denied power to sell until the expiration of the six, twelve, etc., months at which the notes fell due. This construction of the composition agreement is that the trustee could only sell lands to pay the notes as the notes fell due. It is an entirely erroneous interpretation, which would amount to nothing if it were correct, as this court has already decided. But it is not correct. Look at the language of it. The composition agreement provides that the trust deed (that is, the assignment, is as to the lands to remain, with one stated exception. When it remains, how is it to remain? It remains with all its stipulations, with all its provisions, with all its powers, with all its incidents, except in so far as modified by the clause in regard to the Allens. That clause simply makes the Allens agents to sell as the trustee should sell—the original conveyance, which contained not merely the power of the trustee to sell, but also the direction to sell at once,.or as soon as practicable, and that remained along with the other provisions of the instrument. Surely, in order to withdraw his authority to sell at once, the composition agreement, which declared that the instrument should remain, and undertook to set forth the exception to its remaining, should also have set forth that exception, but it did not. *Mentio unius exclusio alterius est.*

Moreover, there is another affirmative provision in the composition agreement which excludes any such notion. The direction explicitly is that the proceeds of the land were to be applied as received (not as the notes fell due) to the payment of the debts.

Argued orally by *St. John Waddell* and *Frank Johnston,* for appellant, and by *Edward Mayes,* for appellees.

WHITFIELD, J., delivered the opinion of the court.

We granted at the last term a reargument, and have given the case a careful and critical re-examination. One of the learned counsel for appellee states that if it were the fact that the assignment itself did not convey land, then the former decision was correct. We fail to see that it was material, as to this point, whether the assignment contained only personalty, and the aiding deeds only land, or whether the assignment contained both. It is clear that the assignment and the aiding deeds of November 25, 1890, all constituted, in law, one transaction, and are, in effect, one instrument, and, this being so, it is plainly immaterial whether land was conveyed by one instrument and the personalty by another, or both were conveyed by one. The assignment and the aiding deeds are, in law, one instrument, and that instrument an assignment, and not a trust deed or mortgage.

Another learned counsel for appellant puts his contention upon the ground that the former decision in 72 Miss., 549, was a square decision; that the composition agreement of December 20, 1890, revoked the assignment *in toto* as to both realty and personalty, and is *res adjudicata* of this point. This is a palpable misconception of said decision. In that case we were combating the then contention of appellant that the assignment proper, and the aiding deeds, both constituting, as stated, the assignment, were one and the same instrument with the composition agreement, evidencing an identical transaction. For the purpose of exposing the fallacy of that contention, we said arguendo, that "so far from the composition agreement effecting the same result with that sought to be accomplished by the assignment and deeds in aid of it, as they were originally framed; its purpose, the purpose of the composition agreement, was just the opposite, to revoke and annul it." The exact point, and the only point, decided was that the nonassenting creditors, one-tenth in number, were necessary parties.

And now this sentence, quoted from the former opinion, is sought thus to be wrenched from its connection, and used, *diverso intuitu,* to show, not only that something was decided which not only was not decided but could not have been decided, but also to set up such alleged decision as *res adjudicata.* It must be obvious that there was no such decision, and, of course, there is no *res adjudicata* in the case.

Still another contention most earnestly pressed now, as it was before, is that the composition agreement revoked the assignment and aiding deeds as to both personalty and realty, leaving the rights of the firm creditors provided for therein, to stand or fall by the composition agreement, and what was done under it; or, that in any case, the assignment and aiding deeds must be treated as modified by the composition agreement, and thus changed from their purpose as originally framed to the purpose declared by said composition agreement. What was done by the assignors, the assignee, and the creditors, under and in pursuance of the composition agreement, did revoke the assignment as to the personalty. Although the assignee did not sign the composition agreement, he did redeliver, as it provided, all the assigned personalty to the assignors.

Was the assignment revoked as to the realty? The assignment and aiding deeds had been duly executed and delivered, the trust thereby created had been, by the assignee, accepted, and its discharge entered upon. The legal title to the lands was out of the grantors, and in the assignee. No reconveyance was made by him. The declaration is expressly made by the assignors, in the composition agreement, that they had been advised that the arrangement manifested by it could be made effectual legally, so as to restore to them the personalty, but not the realty. That instrument further expressly declares, on its face, that "the deed of trust on the lands conveyed to the trustee by the deed of November 25, 1890, shall remain until the notes, with interest, are

discharged," etc. The assignment of December 19, 1891, declares the same purpose, referring to the lands, as heretofore assigned—that is, by the assignment of November 25, 1890, and the assignee is averred by the second amended bill to be proceeding under the assignment with the execution of the trust conferred thereby. It is true that it is averred that the assignee surrendered actual possession, use, and control of all the real estate to the grantors, but it is added that this was done in accordance with said agreement of December 20, 1890, which we have seen did not provide for such return of the realty, and expressly declared that the assignors had been advised that that could not be done, and hence the trust was to remain, etc., as "a security for the new notes to mature in six, twelve, eighteen, and twenty-four months," and the demurrer only admits the allegation in this sense. The contention that the composition agreement revoked the assignment and aiding deeds as to the realty is therefore untenable.

But it is insisted that the composition modified the assignment so as to reserve to the assignors power to sell or mortgage the lands, and that such power, coupled with an interest or not, avoids the assignment. It is, of course, elementary learning that one making a general assignment for the benefit of his creditors, must, in good faith, devote the whole of his non-exempt property to the payment of his debts, parting absolutely with all control over the same, and must reserve no benefit to himself, and retain no power or control over the property. And unlike a mortgage, no equity of redemption exists under such an instrument. Burrill on Assignments, secs. 6, 7. What is the clause here on which this agreement is based? This, "except that we, the grantors, through the trustee, shall have the power to sell or mortgage the lands, plantations, and city property (where the laws of states in which said land, etc., are situated, do not forbid such disposition of the property) which was conveyed to the trustee, the proceeds in all cases to be applied exclusively to the payment of the notes."

This is merely an agreement that the assignee should allow the assignors, as his agents, to negotiate, on account of their perfect knowledge of the lands, sales, or mortgages, which sales or mortgages were to be executed by the assignee who had the legal title, the money to be collected by the assignee, and paid out immediately thereupon by him to the holders of the notes, and the parenthetical clause means merely and only that the assignee was to thus use the assignors as his agents to this end and in this way, and, further, to do this only in the states where it was legal; which last clause has the effect to strengthen the confidence in the good faith of the assignors created by other parts of this record. Whatever the effect of this last provision, however, considered by itself, it cannot make invalid the previous clause, merely constituting the assignors agents for negotiation under the control of the assignee, he alone to make title and collect or pay out the proceeds. In all this there is not a hint of fraud. Such an arrangement, that the assignors in the negotiation of sales, because of their knowledge of the effects and their value, should act as agents of the assignee, would be legal in any state. *Summers* v. *Roos,* 42 Miss., 784; *Janny* v. *Burnes,* 11 Leigh, 100. Cases cited by learned counsel contra, and those cited in Bump on Fraudulent Conveyances, 124, hold such arrangements void as against a creditor in position to assail them on the ground of fraud, when the assignors reserve to themselves the right to use the proceeds. The principle of *Baum* v. *Pearce,* 67 Miss., 700, requires a construction that will, if reasonably possible, uphold the instrument. Was the extension of time—conceding, for the sake of argument, that such extension can be considered as engrafted upon the assignment by the composition agreement—which the trustee never signed, a provision avoiding the assignment at the suit of appellant? Or was it, in the circumstances of this case, merely such reasonable delay as was "incidental and necessary to the proper execution of the trust?" Bump on Fraudulent Conveyances, p. 401. These

lands were large in amount, of greatly differing values, situated partly in cities and partly in the country, scattered through many states, the creditors were very numerous, located in many instances in distant states, with an indebtedness running up into the hundreds of thousands.

Regard must be had to the nature and condition of the property, and to the whole environment. Bump on Fraudulent Conveyances, pp. 401, 402. It must also be noted that the power of anticipating the maturity of these notes, paying them sooner and arresting interest, was expressly reserved, and that undoubtedly the assignee was bound, even under the composition agreement, to sell to meet each series of notes, at the respective maturities, if not then respectively paid. Clearly, therefore, there was no extension for two years as to the whole indebtedness, but extension for six, twelve, eighteem, and twenty-four months respectively. At furthest there was an extension of time for two years of only the last series of notes. We do not think this extension unreasonable in the circumstances of this case. *Barkwell* v. *Swan,* 69 Miss., 907 ; *Bennett* v. *Bank,* 5 Hum. (Tenn.), 612.

We have considered all the cases cited by appellant. Perhaps the two most relied on are *Guggenheimer* v. *Groeschel,* 23 S. C., 274, and *Spence* v. *Bagwell,* 6 Grattan, 444, 450. In the first named case the creditors and assignee, to whom there had been delivery of all the goods assigned, reconveyed all the goods to the assignor, and the whole arrangement as originally framed was purposely vacated. It is thus wholly unlike this case on its facts. In the second case the grantor himself was to give title "to the property to be sold, and himself to collect the proceeds of sale," a wholly different provision from the one before us as we understand and construe it.

But again it is said that the provision for the payment of the debts of the house of R. H. Allen & Co., of New York, introduced a new class of debts and a new creditor. This is a plain misconception of the record, as the pleadings and exhibits

of appellant itself clearly show that the house of R. H. Allen & Co., of New York, was merely a branch of the house of Thomas H. Allen & Co., of Memphis. Exhibit 5 to the amended bill recites as follows: "We propose to issue our notes for the amounts due each creditor, for the debt due by each firm in the name of Thomas H. Allen & Co., of New York," etc. And again it says: "The firm of Thomas H. Allen & Co., referring to the printed statement of their affairs and the statement of the affairs of their New York house, Richard H. Allen & Co., offers to their creditors," etc. And the acceptance of the creditors recites: "We, the undersigned creditors of the firm of Thomas H. Allen & Co., and of Richard H. Allen & Co., hereby agree to the above proposition," which proposition, as shown, recites the fact that R. H. Allen & Co., of New York, was the house of Thomas H. Allen & Co., of Memphis, the latter including and owning the former.

Finally, it is insisted now for the first time, after the judgment of this court on the second appeal, in the reargument now made, that the composition agreement of December 20, 1890, is a mortgage, and that there was no sufficient declaration of the new trusts under our statute of frauds, and, that even if there were such sufficient declaration of trust, it was not set out in any instrument recorded in Mississippi of which appellant had notice.

Now, the whole gist of the amended bill, which is the real initiation of this present controversy, was the claim that the assignment and composition agreement were one instrument evidencing an identical transaction, and were fraudulent and void, so taken and dealt with as one. That contention was shown to be unsound in 72 Miss., 549. The second amended bill is framed on, and presents, the idea that even if the assignment, which included the aiding deeds, was valid as originally framed, yet it was wholly revoked, as to both realty and personalty, by the composition agreement.

This, our opinion on this appeal, now adhered to after the

fullest consideration, showed was was unsound.  And now, after all this, after the bill has been twice amended, and the case has been twice heard and determined by the chancellor and by this court, it is sought to present a wholly new and different contention, never presented by the pleadings before. The position now assumed would make a new case, so new and so entirely outside the pleadings and any relief prayed consistent with the pleadings, that it would only be proper to present it by an original bill.  It must be obvious that it is inadmissible to ask this court, at this stage of this case, to hear and determine this appeal now, on a case never made by the pleadings, not within any relief prayed consistent with the pleadings, and never heard or determined by the chancellor. Let it be noted, too, that complainant was offered leave to file a third amended bill, and declined to do so.

We do not desire to cut off the appellant, however, from relief, if any it has, along this last line of assault upon these instruments, and our judgment of affirmance in this case, therefore, is now pronounced without prejudice to such rights of appellant, if any, along that line, as it may choose to assert in an original bill.  We have given this case a most patient hearing; we find no fraudulent act, nothing that hints at fraud, in the facts set out by the bill.  On the contrary, the purpose of the Allens was to devote their property honestly to the payment of their debts, so far as anything averred in the bill, twice amended, discloses.

*Affirmed.*

~Woods, C. J., dissents.